### IN THE

# COURT OF APPEALS

### OF

# MARYLAND.

*December Term,* 1839.

JOHN GLENN, TRUSTEE OF M. DORSEY, *vs.* ANN CLAPP, EX-
ECUTOR OF AARON CLAPP.—*December* 1839.

It is a clear proposition, that a suit in equity abates by the death of any of
the parties materially interested, and the insolvency or bankruptcy of a
plaintiff or defendant makes it necessary, that the trustee, or assignee,
should be brought before the court.

When the complainants in a bill for a sale die, before the sale, but after a de-
cree, the proceedings should be revived, before any thing further is done.

An admission or agreement, by the surviving parties to the suit, that the in-
terest of the deceased party has been extinguished or satisfied, will not
dispense with the necessity of bringing his representatives before the court.

When a suit has abated after decree, it is settled, that the defendants, or either
of them, where more than one, may file a bill and revive and prosecute the
decree.

The abatement of a suit, before the sale, when relied on as an exception, and
made before final ratification, is a sufficient reason for setting aside the
sale.

After however setting aside a sale upon that ground, as formally irregular,
the court may revive the terms of the contract with the same purchaser,
if advantageous to the parties concerned, who would then be in court,
prepared to protect their interests.

It is no objection to a sale made under a decree, that a bill was depending at
the time to vacate the decree, where the grounds for impeaching it are not

1        v.11

stated, and it does not appear that any order was passed to restrain the proceedings of the trustee.

The court will not set aside a sale, in all other respects unexceptionable, for inadequacy of price, unless so grossly inadequate, as to indicate a want of reasonable judgment and discretion in the trustee.

But if any other just cause appears to doubt the propriety of the sale, inadequacy of price would be a consideration very proper to be viewed in connexion with it.

That a cloud rested upon the title at the time of the sale, which might probably with some exertion be removed, is a ground for ordering a second sale.

If, after distribution of the purchase money, the purchaser should be evicted by a superior title, he must submit to the loss; but if while the fund is yet in court, the purchaser is disturbed in his possession, or exposed to be disturbed, by one having a clear title to the estate, which was unknown to the purchaser at the time of the sale, the sale should be rescinded, and the money restored.

APPEAL from the equity side of *Baltimore* County Court.

On the 21st March 1832, *Thomas Morris* and *William Egerton* exhibited their bill of complaint, suggesting that a certain *Michael Dorsey* being indebted to them on the 5th November 1831, in the sum of $312.90, to secure the same, executed a mortgage of certain property in the city of *Baltimore;* that two days before the execution of said mortgage, that is to say, on the 3rd November 1831, the said *Michael Dorsey* executed another mortgage of the same property to one *Aaron Clapp.* The bill prayed for a subpœna for *Clapp* and *Dorsey,* and a sale of the property and payment of complainant's debt. The mortgage of the 5th November 1831, was exhibited with the bill. The defendants answered the bill, and on the 3rd April 1832, *Baltimore* county court decreed a sale of the property, and directed the proceeds to be brought into court for distribution. On the 19th March 1834, the trustee reported a sale made on the 13th of that month, for $490 to *Thomas Harwood,* and the court passed the usual order of ratification nisi. Before the time expired under this order, to wit, on the 28th March 1834, *John Glenn,* trustee of the said *Michael Dorsey,* filed in said cause the following exceptions, and prayed that the sale made and reported by *R. Purviance,* junior, may not be ratified and confirmed, for the following reasons.

1. That a bill was pending to vacate the deed and decree, under which said sale took place, when the same was made.

2. Because the price paid for the property did not exceed half its value.

And he prays that the trustee may state, whether he does not consider the property worth nine hundred dollars, or nearly that sum.

Afterwards, on the 23rd of March 1837, *Robert Purviance,* junior, the trustee aforesaid, filed in said cause his answer to the exceptions aforesaid, viz: that the lot by him sold was a front lot, with the improvements of a small dwelling erected upon it, it being the same that is described in the mortgage deed filed in the cause, but this lot had connected with it another lot held by *Michael Dorsey,* under some agreement, or contract of lease from the *Baltimore Water Company,* which other lot extended within a few feet of the back steps of the said front house, and was absolutely essential to the comfortable enjoyment of the front house by the tenant; said *Dorsey* having possession of both; but the back lot not being included in the mortgage, trustee had no right to sell it, and the same being claimed by *Mr. John Boggs,* under a levy, or an actual sale made on a judgment against said *Michael Dorsey.* Trustee has enquired about the date of said levy and sale, but has not been able to obtain the same, not knowing the name of the magistrate who rendered the judgment, or the constable who levied the execution, and the trustee not deeming it proper to refer to *Mr. Boggs* upon the subject. With regard to the value of the property, trustee is not prepared to speak positively, he certainly would consider it worth much more than $490, but does not think it worth nine hundred dollars, the back yard being partially cut off, as above mentioned. Something either was mentioned about the title to the property, or some impression prevailed among the company, that there would be a difficulty—trustee after this long interval of time not recollecting precisely what was said, or whence the impression was derived, but it was this impression, or the cutting of the yard as above, which caused the lot to be sold for

less than its intrinsic worth; the property is liable for the dower of the wife of *Michael Dorsey.*

The said *Glenn* then filed the following petition, to wit: The petition of *John Glenn*, permanent trustee of *Michael Dorsey*, humbly shows, that since the decree obtained in this cause, *Michael Dorsey* has become an insolvent debtor, and your petitioner has been appointed his permanent trustee, and duly given bond as such. That since the decree was rendered in this cause, the amount for which the same was rendered, has been fully satisfied and paid, which fact this petitioner has only ascertained this day. He also states that both *Morris* and *Egerton* are dead, that *Egerton* was the surviving partner, and that the executors of his last will and testament are *Archibald Stirling* and *Franklin Anderson*, and that both said complainants died before the sale was made by the trustee, and that both defendants are dead. That the property sold was disposed of largely below its value. He therefore prays, that the sale reported may not be ratified, and that the decree may be entered satisfied, and that the executors of said surviving partner may answer the allegations of this petition, and he will pray.

And on the same day *Ann Clapp*, executrix of the said *Aaron Clapp*, appeared and suggested the death of *Aaron Clapp*, and filed her letters testamentary as executrix aforesaid.

The cause thus standing, on the 29th March 1837, the court (MAGRUDER, A. J.) passed the following order:

In the matter of the exceptions to the ratification of the sale, reported by the trustee on the 19th March 1834—exceptions filed by *John Glenn*, permanent trustee of *Michael Dorsey*, set down for hearing on the 23rd March 1837, and argued same day—I do not think that either of the exceptions can be sustained, nor that there is any thing in the answer of the trustee filed 23rd March 1837, nor in the petition of *John Glenn*, permanent trustee of *M. Dorsey*, filed same day, to interpose any obstacle to the ratification of the sale. The rights of claimants to the fund in court, are subject to be enquired into before the auditor, and proper parties may be made at any

time, for the purpose of settling those rights. In relation to the fact set forth in the petition of the permanent trustee of *Dorsey*, that the mortgage debt due to *Morris & Egerton* has been fully paid, and that the decree ought, therefore, to be entered satisfied—I am of opinion that if there were an answer to the petition admitting that fact, it could not avail to prevent a ratification of the sale, because I consider the decree to have passed as well for the benefit of *Clapp*, the first mortgagee, as for that of the complainants, looking at the statements to that effect set forth in the bill of complaint, and in the answer of *Clapp*. It is therefore, this 29th day of March 1837, ordered by the court, that the said exceptions be, and the same are, hereby overruled. No order for the final ratification of the sale can be made at this time, because it does not appear from the papers, or from any of the proceedings, that there has been publication of the order of ratification *nisi*, passed on the 19th March 1834, in a newspaper, as thereby prescribed. When that is shewn to have been done, by the filing of the certificate of the printer, in the usual way, a final order will be made.

And afterwards, on the twenty-third day of September 1837, the said *Robert Purviance, Jr.*, trustee as aforesaid, filed in said cause the proof of the order *nisi*, ratifying the sale made by him in 1834, and the court (MAGRUDER and PURVIANCE, A. J.) passed an order finally ratifying the sale made by the trustee. *Glenn*, the trustee of *Dorsey*, appealed from this order, and also from the order dismissing his petition.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, and CHAMBERS, J.

By McMAHON for the appellant, and
By T. S. ALEXANDER for the appellee.

CHAMBERS, J., delivered the opinion of the court.

It is a clear proposition, that a suit in equity abates by the death of any of the parties materially interested. The books of practice also inform us, that the insolvency or bankruptcy of a plaintiff or defendant, renders the suit so far defective,

CASES IN THE COURT OF APPEALS

that the trustee, or assignee, must be brought before the court.

That *Morris* and *Egerton*, the complainants in the bill, died before the sale by the trustee, is expressly alleged in the petition filed by the appellant; when the defendants died, is not stated by the petition, although it states the fact of their death. There is nothing in the record to show the period at which *Michael Dorsey*, one of the defendants, became insolvent, but it does appear that the sale was made by the trustee on the 13th March 1834, and that on the 28th of the same month, the trustee of said insolvent appeared in court and filed exceptions to the sale.

It is admitted in the argument, that the proceedings should have been revived before the sale; but it is alleged, that the abatement was only technical, inasmuch as the claim of *Morris & Egerton* had been discharged, and that the subsequent proceedings ought not to be set aside now for this cause. The evidence of this payment to *Morris & Egerton* is to be found alone in the petition of the appellant, and it is said by counsel on both sides, that as the court below has acted upon the petition, assuming its facts, because it has not allowed the opportunity to sustain them by proof, we are to receive this evidence as conclusive.

To whatever extent this may be the case, so far as regards the respective interests of the parties now before the court, we cannot admit that the rights of *Morris & Egerton's* representatives are concluded by allegations made in the cause after they had ceased to be parties to it. It is precisely upon the ground, that great injustice will result by permitting the rights of absent and ignorant claimants to be finally decided by the evidence of other and often interested persons, that the rules have been adopted, regulating the abatement of causes, and requiring proper parties to be brought before the court. The first principles of justice demand that, before the court shall finally and conclusively adjudicate upon the rights of the representatives of a deceased party, an opportunity shall be afforded them to vindicate those rights, quite as much as they demand, that all other persons shall have the opportunity to

defend their property before its title is decided upon by the court. The necessity then of affording to the legal represen- tatives of *Morris & Egerton* an opportunity to contest this question of payment, illustrates the propriety of bringing them into court.

The claim of the appellant in this case, to the surplus of sale, after discharging whatever may be due on *Clapp's* mort- gage, depends upon the payment or non-payment of the *Morris & Egerton* debt: that is to say, these two parties are adverse claimants, so far as we have any information in the cause, de- rived from *Morris & Egerton*, or any one authorised to speak for them. The interest of *A. Clapp's* representatives, is not in the smallest degree affected by a confession, that the debt of *Morris & Egerton* is paid. Can we then, in this condition of the case, assume the fact of payment to *Morris & Egerton* as established by the assertion of the adverse party, admitted by a stranger, who has no interest, (unless indeed it be to ex- pedite the payment of his own debt by the admission,) be- cause it shows the objection to be merely technical, and there- by avoids the delay of making new parties?

We cannot consider the payment to *Morris & Egerton*, so far proved, as to consider it a mere matter of form, to bring in their representatives, to admit or deny it. Every party must be considered a material party, whose interest, as claimed by him on the record, is material, so far as respects the question of abatement.

It is settled law, that where a suit has abated, after decree, the defendants (or either of them, where more than one,) may file a bill, and revive and prosecute the decree; and it is urged hence, that the failure to file such a bill by the appellant, has been the occasion of all the difficulty complained of in the cause, and is a sufficient reason to refuse his application to re- verse the proceedings below. While we admit the right of the appellant, as the proper representative of *Michael Dorsey*, to file a bill of revivor, we are by no means prepared to say he was compelled to do so. He came into court under the invitation impliedly, if not expressly given, by the order of

confirmation *nisi*, and objected to the ratification. His petition may be regarded in the same character as a further exception to the sale. This was sufficient to put the court in possession of the fact. After a suggestion of the death of a material party made by one who is competent to make such suggestion, the court cannot proceed in the cause until satisfied the suggestion is unfounded in fact, except only to take the necessary steps to bring proper parties before them.

If, however, there was a necessity imposed upon a defendant, to revive the proceedings abated by a plaintiff's death, in any case, it would be a difficult matter to sustain the pretensions of the present appellee in this respect. Her intestate was a defendant also. She too had the same privilege to revive the proceedings. She demands further proceedings, and the confirmation of the sale, and payment of her claim. So her counsel insists before us, she is entitled to demand; and this for the reason that the appellant, who represents a co-defendant, and who only claims that all proceedings shall be arrested till proper parties are made, will not file a bill to revive, and thereby make it necessary for her to do so.

These considerations lead us to the result, that the court below should have suspended its proceedings upon the suggestion of the death of the complainants in the cause, until new parties were made, and their subsequent orders must be reversed.

The making of new parties will necessarily bring before the court the questions affecting the sale, and whether it must be set aside, either on account of the previous abatement of the suit by the death of the complainant, or for the reasons alleged in the exceptions first filed.

We think the abatement of the suit before the sale, where that circumstance is relied on as an exception, and made before final ratification, is a sufficient reason for setting aside the sale. But it is to be considered, that the true character of such a sale is, that it is a transaction between the court and the purchaser: that a private sale may be made, as well as a public sale, if the court deem it advantageous, and that after

setting aside the sale as formally irregular, the court might re-vive the terms of the contract with the same purchaser, if no other objections existed, and those terms were deemed advan-tageous to the parties who are thus in court, prepared to pro-tect their interests in this, as in every other respect.

Without intimating, therefore, even a conjecture, as to the course which in this case may be pursued, it is apparent that a contingency may occur, in which it may be necessary that our views be expressed in regard to the other objections taken to this sale.

The *first* exception, to wit, that a bill was pending at the time of the sale to vacate the decree, and the deed upon which it was founded, has not been relied on. The fact that such a bill was pending, without disclosing the grounds upon which it proceeds, and without stating that it had resulted in any order to restrain proceedings under the decree, could furnish no rea-son for setting aside the sale.

The *second* exception, is the inadequacy of price. The trusteee was called upon to answer this objection, and says he considers the property certainly worth more than $490, the sum at which it was sold, but less than $900, the value alleged by the petition, and the trustee alleges that he is not prepared to speak positively of its value. The court will not set aside a sale in all other respects unexceptionable, for inadequacy of price, unless the sum reported by the trustee, is so grossly inade-quate as to indicate a want of reasonable judgment and dis-cretion in the trustee. But where any other just cause appears to doubt the propriety of the sale, it is a consideration very proper to be viewed in connexion with it, that the sale has been also made at a reduced price. The answer of the trus-tee in this case discloses, we think, sufficient grounds, when taken in connexion with the fact, that the sum bid is confessed-ly below the real value of the property, to justify the court below in ordering another sale. The title was evidently clouded, "an impression prevailed among the company that there would be a difficulty," and the adjacent lot "absolutely essential to the comfortable enjoyment" of the lot sold, was involved in

still more doubt, as to its title, in consequence of an alleged judgment and execution, which the trustee might probably with some little exertion be able to explain.

It is true, as alleged in the argument, that in chancery sales in this State, there is no examination into the title by an officer of the court, as in England, and if after distribution of the purchase money, the purchaser should be evicted by a superior title, he must submit to the loss, and has no redress; but if while the fund is yet in court, the purchaser is disturbed in his possession, or exposed to be so disturbed, by one having a clear title to the estate, which title was entirely unknown to the purchaser at the time of sale, we think the plain principles of justice require the sale to be rescinded, and the purchase money to be restored.    As between the parties to whom the proceeds of sale are ultimately to be paid, and the purchaser, the transaction is so far *in fieri,* that a total failure of consideration, should prevent them from receiving the stipulated price.

The court should not therefore in this case be restrained from setting aside the sale, from any apprehension, that a defect in the title might be exposed at another sale, and a less sum be realized.    The trustee should use reasonable efforts to disembarrass the title of any supposed difficulty.    If the title is not good, fair dealing requires it to be known, if the knowledge of it is conveniently to be acquired; if it be good, the parties entitled ought to receive, and the purchaser to pay a just equivalent; and bidders will then be placed on more equal terms, as well those who may have had the means to investigate the title fully, as those who have not.

Entertaining the opinion, that the court below was wrong in dismissing the petition, which suggested the death of the complainant, and in proceeding to ratify the sale, we must reverse the orders passed in respect thereto; and remand the cause for such further proceedings, as the parties may pursue, consistently with the foregoing views.    The costs in this court to be paid by the appellee.

ORDERS REVERSED AND CAUSE REMANDED.