ROBERT M. GIBBS ET AL.
     vs.           }   JULY TERM, 1847.
WILLIAM C. CUNNINGHAM ET AL.

[TRUSTEE'S SALE—OBJECTIONS TO.]

AN advertisement for sale of lands by a trustee, stated that, "By virtue of a decree of the High Court of Chancery, there will be sold certain real estate," naming the tracts and giving their locality, "of which J. C. died seized and possessed;" but did not state the names of the parties to the suit in which the decree passed, nor the several incumbrances upon the property. HELD—

That the sale would not, on this account, be vacated in the absence of proof, that competition in the purchase was prevented, or the sale in any respect prejudiced thereby.

The objection that the trustee did not sell the interest of the parties to the suit, but only the interest and title of which J. C. died seized and possessed, is an objection which only the purchasers themselves could take, as they, and they alone, are injured by it.

Where a sale is objected to on the ground of inadequacy of price, resulting from doubts about the title, which doubts could have been removed by reasonable efforts on the part of the trustee, his neglect to do so may effect the question of ratification.

Inadequacy of price will not induce the court to vacate a sale, in other respects unexceptionable, unless such inadequacy is so gross as to indicate a want of reasonable judgment and discretion on the part of the trustee.

The sale, in this case, was made for $3000. HELD—that an offer of $4000, made subsequent to the sale, and after the value of the property had been enhanced, could have but little weight in determining whether the property previously sold at a price so much below its value, as to indicate a want of reasonable judgment in the trustee.

The validity or invalidity of a sale must depend upon the state of circumstances existing at the time it was made. In sales made by trustees, acting under the decrees of a court of chancery, the court is the contracting party on the one side, and the bidder on the other—the trustee being regarded as the mere agent or attorney of the court.

A trustee after making fruitless efforts to sell the lands, according to the terms of the decree, sold them at *private sale*, at a price greatly exceeding the best offer he could get for them at public sale. HELD—

That, upon the principle that chancery will always ratify an act when done, which upon previous application would have been authorized, the objection to the act of the trustee founded upon the *form of the sale*, cannot prevail.

Whilst the court will vacate sales, by trustees, made under the influence of error, fraud, misrepresentation or injurious mistake, it would, nevertheless, be a fatal policy to be astute in finding out objections to them.

It was objected to the sale that the trustee's bond was not upon stamped paper, as required by the act of 1845, ch. 193, which went into operation on the 1st

of May, 1846. The bond was dated on the 29th of April, 1846, but was not filed and approved until the 7th of July, following. HELD—

That, this bond having been *approved by the Chancellor*, as required by the decree, it would be of dangerous consequence to say that the purchaser shall not get the benefit of his purchase, if the bond for any reason is defective.

———

[This case was heard on exceptions to the sale made by the trustee appointed to sell the lands of James Cunningham, deceased, for payment of his debts. According to the requisitions of the decree under which he acted, the property was first exposed at public sale, on the 8th September, 1846. The bids were rejected by the trustee for insufficiency, but the advertisements in the papers were still continued by him. Inquiries were afterwards made concerning the property of Duff Green, as agent for certain other persons, and the trustee expressed his willingness to receive and consider any propositions from him, but nothing further was heard from him, from that time to the 24th of May, 1847 ; and it was on the 15th May, 1847, sold to Jacob Markell, at private sale, for $3000 in cash, which price was deemed advantageous by the trustee, and higher than what was offered at the public sale.

A portion of the lands of the deceased had been, in his lifetime, mortgaged to Henry Wayman and Richard G. Stockett ; and he had afterwards also executed a deed of trust to said Wayman, who had refused to execute the trusts in any manner.

The ground taken by the third exception was, that there was alleged to be an outstanding tax title in some purchaser, the validity of which title was doubtful ; a legal tender of the taxes, and premium, and costs, had been made by the exceptant, Wayman, to the tax purchaser, so as to entitle him to redeem the lands, which was refused, whereby the title of the purchaser was released, and the land re-invested in the former owners. The exceptant stated his belief, that the trustee, at the time of the sale, was ignorant of this tender and refusal.

The exceptions argued were filed by Wayman, and the grounds upon which they were based will sufficiently appear from the opinion of the Chancellor, who after stating the case said :]

THE CHANCELLOR:

The first objection taken to the sale is, that the public were not properly advised of the title in the property thus sold, which the trustee had the power to sell.

This objection rests upon the supposition, that the trustee should have stated in his advertisement, the names of the parties to the suit in which the decree passed, and the several deeds creating incumbrances upon the property.

The decree, it will be recollected, directs that the real estate of James Cunningham, deceased, in the proceedings mentioned, or so much thereof as may be necessary to pay his debts, be sold. It does not say in terms, that the title of the parties to the suit shall be sold, though no doubt a sale under the decree would pass such title.

The language of the advertisement is, "by virtue of a decree of the High Court of Chancery," there will be sold certain real estate, naming the tracts and giving their locality, of which James Cunningham died seized and possessed. It does not say, his title alone will be sold, but the lands, of which he died seized and possessed. The public was notified by this advertisement, that these lands were to be sold under a chancery decree, to which decree, of course, there must be parties, and I am of opinion, that in the absence of evidence, that competition in the purchase was prevented by the character of the advertisement, or that the sale was in any respect prejudiced thereby, it seems to me, it should not on this account be vacated. A reference to the chancery proceedings, to which the public was directed would have shown who were the parties and what title was to be sold. The trustee's advertisement referred to the fountain of his authority; described the lands to be sold by name and locality, and give such other information respecting them, as would enable persons disposed to purchase, to ascertain all that was material they should be informed of. The Chancellor does not think, from an examination of forms of the advertisement of chancery sales usually employed, that such precision as is insisted upon by the counsel for the parties objecting to this sale, has been supposed to be necessary.

The second objection is, that the trustee did not in fact sell the interest of the parties to the suit, but only the interest and title of which James Cunningham died seized.

The purchasers, in their answers to these exceptions, take a different view of the matter; but conceding that this exception states truly the nature and extent of the interest purchased by Markell, still this seems to be an objection, which only the purchasers themselves could take, as they, and they alone, are injured by it. Besides, it may not be unworthy of remark, that the sale reported by the trustee, disposed of precisely that interest in the lands of which Cunningham died seized; and the answer of Wayman to the bill under which they were sold, states, "that he died seized in fee for the several tracts of land named and described in the bill of complaint."

The third objection has reference to the cloud upon the title, which, it is supposed, might readily have been removed, but which the trustee was not in a condition to remove by reason of his ignorance of facts known to Wayman, one of the objectors.

This objection may, perhaps, be open to the observation, that if Wayman knew any fact which would disperse the cloud which hung over the title, and omitted to communicate it to the trustee in due time, it does not become him, when a sale has been made, upon the ratification of which other parties, interested in the proceeds, are insisting to interpose an objection upon that ground.

It is true, that when a sale is objected to upon the ground of inadequacy of price, which inadequacy may be traced to doubts about the title, it becomes material to inquire, whether the trustee might not, by reasonable efforts, have removed the cloud; and if the court can see that such efforts were not used, the question, whether the sale shall, or shall not be ratified, may be affected by such neglect. *Glenn* vs. *Clapp*, 11 *G. & J.*, 1.

But from the very nature of the doubt about the title in this case, it was impossible that any diligence on the part of the trustee could remove it. The opinion of counsel might be taken upon the subject, but nothing short of the judgment of the court could solve the question. It appears by the proceed-

ings, that the party who purchased for taxes, asserted and was determined to maintain the title thus acquired.

The fourth and fifth objections are based upon an alleged inadequacy of price, and upon negotiations carried on by Mr. Wayman for the sale of the property, which resulted, as stated, in selling at a price much higher than the price obtained by the trustee. That inadequacy of price will not induce the court to vacate a sale, in other respects unexceptionable, unless such inadequacy is so gross as to indicate a want of reasonable judgment and discretion in the trustee, was said by the Court of Appeals, in *Glenn* vs. *Clapp*, 11 G. & J., 9.

It is material, therefore, to inquire, whether the inadequacy of price in this case, is so gross and palpable as to indicate a want of indiscretion and judgment on the part of the trustee. Looking to the bid made on the 8th September, 1846, when the lands were offered at public sale, as any criterion of the price which could probably be obtained for them; [and] the sale reported, surely cannot be condemned upon the ground of inadequacy, since the sale reported is for a much larger sum than was offered at the public bidding.

But it is said, that although the price bid at the public offer of this property, was less than the sum which Markell and Thomas propose to pay; yet the trustee had information that negotiations were pending, if not concluded, by Wayman, for a much larger sum; and that under such circumstances the trustee should have at least communicated with Mr. Wayman before he made a sale. The Chancellor thinks, that the reasons assigned by the trustee for proceeding as he did, are satisfactory, and indeed, Mr. Wayman himself confesses, that he, and not the trustee, was remiss in not giving information at the proper time. But is there in truth, any evidence, that these lands are worth more? Or that more could be obtained for them than Markell and Thomas have agreed to give. And emphatically, it may be asked, is there any evidence to show that a better price could have been had on the 15th of May, 1847, the date of the sale.

The letter of Duff Green, on the 19th of August, 1847, with

its conditions and qualification, cannot be regarded as an offer ; and yet it is the only one which has been made for the property, except such as may be found in the correspondence of the same party, and his son, with Wayman ; and in the contract of the 9th June, 1847, between Wayman and Green, which, besides containing stipulations which render it totally inadmissible, is in effect withdrawn by the letter of the 19th August last. In fact, though this property has been in the market by advertisement in the newspapers, with very little intermission from August, 1846, to May, 1847, the offer of Mr. Markell is the only one to which any substantial character can be assigned, besides the almost nominal bid on the 8th September, 1846.

It is true, Mr. Wayman, by a paper filed on the 7th instant, [Sept. 1847,] agrees to give four thousand dollars for the property, on the terms reported by the trustee ; but this offer, in my opinion, cannot be allowed to have much weight in determining whether the property sold previously at a price so much below its value, as to indicate a want of reasonable judgment in the trustee.

It is made after an event has happened, subsequent to the reported sale, which, in the opinion of many persons, has enhanced the value of the property. The Chancellor thinks, as was said by the Court of Appeals, in the case of *Tyson* vs. *Mickle,* 2 *Gill,* 384, that the validity or invalidity of the sale must depend upon the state of circumstances existing at the time it was made. The clear equity of such a principle seems undeniable.

The sixth ground relied upon for not ratifying this sale, is founded upon the manner in which it was made. It was a *private sale,* though the decree, which is in common form, directs a public one. For this deviation from the decree, it is supposed, the sale must be condemned.

It is an admitted principle, that in sales made by the agency of trustees acting under the decrees of a court of chancery, the court is the contracting party on the one side, and the bidder on the other ; the trustee being regarded as the mere agent and attorney of the court. I say, this is the principle, though

unlike all other contracts, one of the contracting parties is per-
mitted to sit in judgment upon the contract, and pronounce
upon its validity or invalidity.      *Glenn* vs. *Clapp*, 11 *G. & J.,*
8 ; 2 *Bland,* 638, 639.

The principle, however, is understood to be incontestible,
and as has been conceded in the argument, Chancellor Hanson
has laid down the rule, which should govern the court in de
ciding upon sales made under its authority.    In the case of
*Lawson* vs. *the State,* in 1804, he observed, that reasons which
would induce him as proprietor or trustee, to set aside a sale
made by his agent, should determine him as Chancellor, to re-
fuse his approbation to a sale made by a trustee.

It was decided by the late Chancellor, that if a trustee di-
rected to sell at public sale, does, notwithstanding, sell at pri-
vate sale, the sale will be confirmed, if satisfactory reasons are
given for doing so, and no objection is made.    *Andrews* vs.
*Scotton,* 2 *Bland,* 643.

The council by whom this case has been argued, have
differed as to what was meant by the Chancellor, when he
speaks of no objection being made ; but my impression is, that
he must have meant, objections of sufficient force to outweigh
the reasons given by the trustee for deviating from the terms of
the decree.    And that he could not have intended that reasons
which would be satisfactory to him in the absence of objec-
tions, should be overborne by the mere unsupported veto of
any one.

Looking to the court as the vendor, and the trustee as its
agent, according to terms prescribed by the former, if for rea-
sons deemed sufficient by the court, the agent departs from the
form in which he is to exercise his authority, who could have a
right, merely upon the ground of such departure, to say that
the principal should not ratify the act of its agent ?

If the principle be sound, that the court is the vendor, and
to be considered the proprietor of the thing to be sold, such a
right of abitrary interdiction on the part of any one cannot be
maintained.

But it is to be recollected in this case, that the trustee did

not undertake to sell these lands at private sale, until a fruitless effort had been made to dispose of them according to the terms of the decree; and that even after he had failed in this effort, they were constantly kept in the market by advertisement offering them at private sale. It is not the case, therefore, of a trustee who has undertaken to depart from the terms of the authority under which he acts, without first making an effort to comply with them; but it is the case of a deviation from the terms, after an effectual endeavor to conform to them. It is also a circumstance very material to be considered, that the price at which the trustee has contracted to sell these lands greatly exceeds the best offer he could get for them when exposed to public sale; and another very strong recommendation of the sale made, is to be found in the circumstance, that the property was never withdrawn from the public eye, but kept always before it and in the market by advertisements in the newspapers.

In *Tyson* vs. *Mickle*, 2 *Gill*, 383, a private sale made by a trustee was confirmed by the court, though the amount of the private bid was considerably less than had been offered for the same property when exposed publicly; and the court in that case, say, that Chancery will always ratify an act when done, which upon a previous application would have been authorised. It is true that in the case of Tyson and Mickle, the parties interested consented to the sale, but one of those parties, and one largely interested, was a minor, and, therefore, incompetent to consent. Adopting the principle of the Court of Appeals, that an act when done will be ratified, which the court, if applied to beforehand, would have authorised, I am of opinion that the objection to the act of the trustee in this case, founded upon the form of the sale, cannot prevail; as it seems to me, that upon an application, setting out all that has taken place, prior to the sale, to Mr. Markell, the trustee would have been authorised to accept his offer.

Whilst the Chancellor would consider it his duty to vacate sales made by officers of his appointment, under the influence of error, fraud, misrepresentation, or injurious mistake; he,

nevertheless, thinks, that it would be a fatal policy, to be astute in finding out objections to them. The impression of the court is, that they are entitled to the benefit of every fair and reasonable intendment, and that a bona fide purchaser is not to lose the rights which he supposed he was acquiring when dealing with its agent, upon objections upon the model regulations of the sale, the non-observance of which is not shown to have been injurious. *Marshall's Lessee* vs. *Green-field*, 8 *G. & J.*, 349.

The seventh objection to the sale, is, because the trustee's bond is not upon stamped paper, as required by the Act of 1845, chapter, 193. The law went into effect on the 1st of May, 1846, and this bond though dated on the 29th of April, 1846, was not filed and approved by the Chancellor, until the 7th of July following.

The argument is, that the bond was of no effect until filed and approved ; those acts constituting its delivery and accept-ance.

By adverting to the terms of the decree, it will be found, that the trustee is to proceed to make sale of the property, upon giving bond in a certain penalty, and with sureties to be approved by the Chancellor, conditioned for the faithful per-formance of the trust reposed in him by the decree.

This bond has been *approved by the Chancellor*, and it seems to me, it would be of dangerous consequence to say, that although thus approved, the purchaser shall not get the benefit of his purchase, if the bond for any reason is defective.

Few persons, I presume, would be disposed to bid at trus-tees' sales, if such a doctrine is to obtain. The Chancellor for this reason, does not deem it necessary to express an opinion upon the point discussed by the counsel ; but upon an applica-tion to require the trustee to execute another bond, he will be prepared to do so.

The remaining exceptions, relating to the subsequently in-creased value of the land from the contemplated passage of the Baltimore and Ohio rail road through or near it, was passed over by the Chancellor, as having been sufficiently disposed of by

his previous remarks. The objections were overruled; the parties being directed to pay their own costs respectively.

[The order in this case was affirmed on appeal.]