| JOSEPH J. SPEED, TRUSTEE, vs. THOMAS SMITH AND EDWARD BOYLE. | September Term, 1851. |

[EXCEPTIONS TO TRUSTEE'S SALE.]

THE omission to make a prior incumbrancer a party, though it might possibly be error, for which the decree would be reversed on appeal, will not render the sale void.

A mortgage was executed by an insolvent, and his trustee, nearly twelve years after, petitioned for the benefit of the insolvent laws, upon which a decree for the sale of the mortgaged premises was passed. HELD—

That an objection to the sale upon the ground of the incapacity of the mortgagors to execute the mortgage cannot be sustained, the presumption being after such lapse of time and in the absence of proof to the contrary, that no debts due by the insolvent, *at the time* of his application, remain unpaid.

In the absence of any misleading representation by the trustee of the condition and value of the property, an objection by the purchaser that it sold for more than its worth, cannot be sustained, the property having been open to his examination.

If the trustee makes any promise or representation to the bidders, that the estate shall be, or is, clear of all incumbrances, or that the title is better or different from that which would flow from the proceedings, which promise or representation cannot be complied with, or turns out to be erroneous, the sale will be set aside.

The advertisement stated that property sold was subject to a ground rent of "only ten dollars." The exceptant offered in evidence a lease of property of which that sold was a part, executed in 1796, for the yearly ground rent of twenty dollars. Several subsequent conveyances of the property sold were shown and that the ground rent paid upon it had been $10, and no proof was offered that this particular property had, since the lease, been held liable to the rent of $20 therein reserved. HELD—

That an objection to the sale on this ground could not be sustained, the Chancellor being of opinion, that there had been an apportionment of the original ground rent acquiesced in by those who claim under the original lease.

The trustee stated, at the sale, that there were claims against the property, but that he would retain a sufficient amount of the purchase money to pay them, and that the purchaser would get a good title, which statement the purchaser heard. HELD—

That the pendency of a suit to foreclose a prior mortgage on the property was no sufficient ground to set the sale aside, but the court will see that the offer of the trustee to clear up the title is performed, and that a sufficient amount is retained out of the proceeds of sale for that purpose.

The court, in all sales under its decrees, is itself the vendor, *acting* through the instrumentality of its trustee or agent, for the benefit of the parties concerned.

A sale is not void because the trustee may have omitted to give bond as required by the decree before it was made.

A private sale, if decreed advantageous, may be ratified by the court, though the trustee was directed by the decree to sell at public sale.

[The exceptions to the sale made in this case referred to in the Chancellor's opinion were taken by the purchaser, and are in substance as follows :

1st. That the property was offered upon the terms set forth in the advertisements by J. J. Speed, who in one advertisement professed to act as trustee under the decree of this court, and in the other as trustee under a deed of trust; and said trustee stated in said advertisements that the ground rent is *only* ten dollars, whereas exceptant has since the sale discovered that it is subject to a much larger ground rent, of which he immediately notified the trustee, and that he would not on that account take the property.

2d. Because it was alleged at the sale that a good title would be given to the purchaser, who would take the property free from all incumbrances, whereas exceptant has ascertained since the sale that it is not so free, and that a good title thereto cannot be given by the trustee.

3d. That exceptant when he bid for the property knew nothing about the title to it, and relied upon the representations then made, but as soon as he ascertained the difficulties of the same, he notified the trustee that he would not comply with the terms of sale. That since the sale he has learnt that the decree in this case was rendered upon a mortgage given by Thomas Smith, who had previously applied for the benefit of the insolvent laws, and by Edward Boyle, who was his permanent trustee, and he has been advised that a mortgage such as this and a decree founded thereon, is binding only upon said Smith and and Boyle in their individual capacities, and does not bind the

creditors of Smith prior to his application, and he alleges that there are such creditors not paid, and therefore the trustee cannot pass a valid title free from all incumbrances, such as he professed to pass when he made the sale.

4th. That Smith having applied for the benefit of the insolvent laws, could not as against his creditors make a valid and legal mortgage, and Boyle as his trustee, was not authorized to unite therein, and his so doing had no legal effect, and therefore the mortgage and proceedings in the cause did not authorize the trustee to pass a valid and binding title to the property such as he professed to pass when he offered the same for sale.

5th. That the proper parties were not made in this cause.

6th. That since the sale exceptant has become informed of the following circumstances, of which he was altogether ignorant when he made the purchase. That Smith applied for the benefit of the insolvent laws in 1836, and that Boyle was duly appointed his permanent trustee. That on the 1st of December, 1841, Smith executed a mortgage to one John N. Smith, to secure the sum of $1526, and that subsequently on the 24th of December, 1848, the mortgage on which the decree was passed was executed by Smith and Boyle to Speed. That on the 17th of November, 1849, a bill was filed in Baltimore County Court, as a court of equity, by the administrator of John N. Smith, against said Thomas Smith and Speed, to foreclose said mortgage of the 1st of December, 1841, and to sell the property. That said Smith and Speed appeared to said case, and that the proceedings therein are still pending and unsettled, and said Speed, notwithstanding the pendency of said proceedings, offered the property for sale in manner and form hereinbefore mentioned, and this exceptant had no knowledge of the same at the time of the said sale.

7th. That Speed, when he offered the property for sale, in fact offered it under a deed of trust, which he alleged had been given him by Smith, as well as under the decree in this case, but that these facts are not set forth in the report of sale made by the trustee, and that said report is also informal and imper-

25*

fect in that it contains no sufficient description of the property therein reported to have been sold.

8th. That when exceptant was informed by his counsel that Speed derived his power to sell from an insolvent debtor and his permanent trustee, and in a case where there was an outstanding mortgage in dispute and unsettled, and where the ground rent was greater than it was represented to be, he at once declined to take the property unless all incumbrances were immediately removed and a good and valid title made, which could only be done by obtaining a release of said mortgage, and of the ground rent above ten dollars, and a confirmatory deed from all the creditors of Smith; and at once notified the trustee that he was not bound to take the property, and would do so only in case the terms of sale were immediately complied with, and he therefore protests that he is not bound to take it, and is entitled to be released from his purchase.

An additional exception was filed at the hearing; that the trustee did not file a bond with approved security as trustee before offering the property for sale, and that no bond has heretofore been filed in the case, and the trustee not having given bond, as required by the decree, was not authorized to make a sale, and upon this ground he prays that the sale may not be finally ratified.

The other facts and proceedings in the case are sufficiently stated in the opinion of the Chancellor.]

THE CHANCELLOR:

This case has been brought before the court, and has been argued by counsel, orally and in writing, upon exceptions to the sale reported by the trustee on the 16th of July last.

It appears by the proceedings, that on the 24th of April, 1848, Thomas Smith and Edward Boyle, the latter being the duly appointed and qualified permanent trustee in insolvency of the former, conveyed to the complainant, Speed, a parcel of leasehold property, in the city of Baltimore, to secure the payment of the sum of one thousand dollars loaned by him to the mortgagors, together with the interest thereon, in one year

from the date thereof. The property, as described in the mortgage, is therein stated to be subject to the payment of a ground rent of ten dollars per annum, and the mortgage being executed in pursuance of the provisions of the act of 1833, ch. 181, an application was made to the court, as authorized by said act, on the 5th of May following, for a sale of said property, in case the debt, with the interest thereon, should not be paid according to the stipulations of the mortgage, and a decree for that purpose passed on the same day, authorizing a sale of the mortgaged premises when the time limited for the payment of the money should have elapsed.

The money not being paid, the trustee named in the decree advertised the property for sale, and on the 12th of July last, the same was sold at public auction, to the exceptant, William Wylie, for the sum of $5,300, and the sale reported on the 16th day of the same month.

The proceedings further show that Thomas Smith, one of the mortgagors, had applied for the benefit of the insolvent laws on or about the 7th of December, 1836, and that Boyle, who was appointed his permanent trustee, reported to Baltimore County Court, on the 28th of September, 1849, that for the purpose of closing his trust, he had sold the surplus property on hand, including the premises in the proceedings in this cause mentioned, to said Smith, which sale was confirmed by said court on the 13th of November following, and the consideration money being paid by G. Smith, Boyle, on the 26th day of the same month and year, conveyed the property to him, and that on the same day Smith conveyed the same to Speed, the complainant in this cause, and the trustee appointed by the decree of this court, in trust, with power to sell for the purposes in the said deed mentioned.

The complainant thus filling the double capacity of trustee of this court and trustee under the deed to him from Smith, advertised the property in both capacities, and in his capacity of conventional trustee, declared the property would be sold free from all incumbrances, as appears by a copy of the printed advertisement, to be found among the proceedings in this cause.

Prior, however, to the mortgage from Smith and Boyle, to the complainant, that is to say, on the 1st of December, 1841, the former had conveyed the same parcel of property to one John N. Smith, by way of mortgage, to secure the payment of the sum of $1,526, upon which mortgage Bolivar B. Daniels, as administrator of the mortgage, filed a bill on the equity side of Baltimore County Court, against the mortgagor, and Speed, the complainant in this cause, which bill has been answered, and the claims being contested, the cause is still depending in that court.

On the day of the sale, the purchaser, Mr. Wylie, signed a paper, acknowledging himself to be the purchaser for the sum mentioned in the report of the trustee, and promising to comply with the terms of sale, but as appears by a memorandum on the same paper, within a few days thereafter he notified the trustee of his objections to the title.

The objections which are now urged to the ratification of the sale, which relate to the form of the proceedings under which the decree was obtained, are not, in my judgment, tenable.

The act of Assembly under which the mortgage was given and the application made to the court for a decree upon it, contemplates, only an *ex parte* proceeding, and indeed, if it were otherwise, the omission to make a prior incumbrancer a party, though it might possibly be error, for which the decree would be reversed on appeal, is unquestionably not sufficient ground for treating the proceedings as a nullity and the sale void.

I also regard the objections to the mortgage upon which the decree passed upon the ground of the incapacity of the mortgagors to execute such an instrument as invalid. That mortgage was executed by the insolvent and his permanent trustee nearly twelve years after the former petitioned for the benefit of the insolvent laws, and therefore, in the absence of proof that any of the debts due by the insolvent at the time he petitioned, remain unpaid, it may reasonably be presumed that none such exist. And this presumption is strongly fortified by the two deeds of the 26th of November, 1849, the one from Boyle, the trustee, to Smith, and the latter from Smith to Speed.

I likewise attach no weight to the objection that the property sold for more than it was worth. In the first place, it appears that the bid of the exceptant only exceeded, by a small amount, what was offered by other bidders, and in the next, the property was open to the examination of the purchaser, and it was his own fault if he did not fully acquaint himself with its value. There is no pretence that any misleading representation was made to the trustee in regard to the condition or value of the property.

The objections affecting the title remain to be considered.

Whether it be the settled law of this court, as was said by the late Chancellor, in the case of *Anderson* vs. *Foulke*, 2 *H. & G.*, 358, that "to all judicial sales under its orders or decrees the rule *caveat emptor* applies," and that in all such cases the right and title of the parties to the suit, and nothing more, is sold, need not now be investigated, though it may be remarked that the rule *caveat emptor* is certainly subject to some modification, as appears by what fell from the Court of Appeals in the case of *Glenn* vs. *Clapp*, 11 *G. & J.*, 10. It is not necessary to express any opinion upon the point now, because it is supposed to be very clear that if the trustee makes any promise or representation to the bidders, that the estate shall be, or is, clear of all incumbrances, or that the title is better or different from that which would flow from the proceedings, and the promise or representation cannot be complied with, or turns out to be erroneous, the sale will be set aside. And the question, therefore, in this case, is, whether the promise or representations alleged to have been made by the trustees under this decree is of such a character as upon the facts and circumstances disclosed by the evidence will vitiate this sale ?

The first objection, founded upon the charge that an erroneous representation was made by the trustee in relation to the incumbrances to which the property is subject, is, that the advertisement stated that the ground rent was only ten dollars. It appears by a copy of the lease filed in the cause, that the property of which the premises in question is a part, was leased by the late John E. Howard to Joseph Osborne on the 19th of

March, 1796, for ninety-nine years, renewable forever, at and for the yearly rent of twenty dollars. And that the property mentioned in the proceedings in this cause being a part of the premises contained in the lease from the said Howard to Osborne, was, on the 20th of August, 1830, conveyed by Rosannah Kilbreath, administratrix of Thomas Kilbreath, to Thomas Smith for the sum of $2,155, with like liberty of renewal, subject to a ground rent of ten dollars. It appears by the recitals in this deed, that the sale was made by order of the Orphans Court, and that the property had been conveyed to one Thomas Hicks, and by the latter to Thomas Kilbreath, by whose administratrix it was conveyed to Thomas Smith.

There is nothing to show how the title to the ground rent passed from Howard, the lessor, but a witness by the name of S. G. Shipley, was examined, who says he is and has been the owner of the rent for six or seven years, and bills are exhibited made out in his name, with his receipts attached, charging ten dollars a year rent, for the years 1850 and 1851, which the receipts show were paid by the trustee Speed. The evidence of Shipley is excepted to, and it appears to me the best evidence of his being the owner of the rent, would be the deed under which he claims, and that his parol evidence is, therefore, objectionable, but seeing that the lease from Howard is upwards of fifty-six years old, and that no proof has been produced to show that this particular parcel of property is now held liable for the rent of $20 reserved by that lease, I cannot think it would be proper to conclude that it is so liable. The burden of proof is upon the exceptant, and I am by no means prepared to say, he has made his case out simply by the adduction of a lease executed more than half a century ago, without any proof whatever that the rent reserved by the lease has been exacted from the owner of this particular parcel. On the contrary, I am of opinion, upon the proof now before me, that there has been an apportionment of the original ground rent between the two lots into which the property embraced in the lease from Mr. Howard has been divided, and that by this apportionment the premises mentioned in the proceedings in this cause have been

subjected to the payment of ten dollars only, and that this division of the incumbrance has been acquiesced in by those who claim under the original lessor.

The remaining objection to the title rests upon the mortgage given by Thomas Smith to John N. Smith for $1526, on the 1st of December, 1841. Prior to the execution of this mortgage, that is, in December, 1836, Smith, the mortgagor, had applied for the benefit of the insolvent laws, and Edward Boyle was his permanent trustee, and at the date of the mortgage, Boyle had not reconveyed the mortgaged premises to Smith. It may be well questioned, therefore, whether Thomas Smith, at the date of his mortgage to John N. Smith, had any title to convey. But a bill upon this mortgage has been filed, and is now depending in Baltimore County Court, and the existence of this suit is urged as constituting a valid objection to the sale.

The trustee, in his advertisement of the property under the authority of the decree of this court, says nothing about the title except that the ground rent is only ten dollars, but in his advertisement under the deed from Smith to him, he says the sale is made "free from all incumbrances," and it is alleged that the mortgage to John N. Smith, and the suit upon it in Baltimore County Court, constitutes an incumbrance which shows the representation to be inaccurate, and relieves the purchaser from the obligation to complete the purchase.

Without stopping to inquire how far a sale made by a trustee appointed by a decree of this court, can be affected by representations made by the same person acting in a different capacity, it remains to be seen whether the purchaser was not, or might not, have been informed prior to the sale, of the existence of claims against, or incumbrances upon this property.

There can be no doubt, I think, from the proof, that on the day of sale, and before the bidding commenced, Mr. Speed, the trustee, announced publicly, that the taxes and ground rents would be paid to the day of sale, and that there were claims or a claim against the property, but that a sufficient amount of the purchase money would be retained by the trustee to pay the claims, and that the purchaser would get a good title.

It is true, some of the witnesses say, they did not hear Mr. Speed make this declaration, but that he did make it, and that publicly, it is impossible to doubt, and there is no reason to doubt that he was heard by the purchaser. The trustee may not, and I presume did not, say any thing about a chancery suit, but it seems to me, when he spoke of claims against the property which he would retain money in his hands to pay, he said enough to put bidders on inquiry, and if they neglected to make the inquiry, they cannot, for that reason, escape the obligation of their contract and avoid the sale.

But as the declaration was made, and the offer to clear up the title is an important stipulation in the contract, this court will see that it is performed, and that there is retained of the proceeds of the sale a sufficient amount for that purpose, and as it is clear that the money arising from the sale made by the trustee is abundantly adequate, to remove the incumbrance, there are no grounds for apprehending that the title of the purchaser may not be perfected.

I do not, therefore, see, in the existence of the mortgage to John N. Smith, and the pendency of the bill upon it in Baltimore County Court, an adequate reason for refusing to ratify the sale reported in this case. There is certainly no sufficient ground for supposing that the agreement of the trustee to remove incumbrances from the property may not be performed, and, if that is done, the purchaser has no cause for complaint.

The exceptions of the purchaser to the ratification of the sale, were filed on the 2d of September last, and by an order passed on the day following, they were to have been heard on the 10th of the then ensuing month of October, upon notice as usual to the trustee, but the parties afterwards, by an agreement filed on the 20th of the same month, postponed the hearing until the 28th, and it was submitted on that day, upon a written argument on the part of the plaintiff, and an oral one on the part of the purchaser. And on the same day the purchaser interposed an additional exception, upon the ground that the trustee had omitted to give bond conditioned for the faithful performance of his trust prior to the sale, or at this period, and that there is no such bond now among the proceedings.

The trustee, in reply to this exception, has filed a petition, verified by his affidavit, in which he says he did give such bond, and supposes it has been lost or mislaid, and proposing now to give a new bond, which shall be received *nunc pro tunc.*

It is by no means a clear proposition that a sale made by a trustee, acting under the authority of a decree of this court is void because the trustee omitted to give bond prior to the sale, as required by the decree, and it may, perhaps, be well doubted whether the purchaser, who is not bound to see to the application of the purchase money, can urge such omission as a ground of objection to the sale.

It is the established doctrine of the court, that in all sales under its decrees, the court itself is the vendor, acting through the instrumentality of its trustee or agent, for the benefit of the parties concerned. *Iglehart* vs. *Armiger,* 1 *Bland,* 527 ; *Glenn* vs. *Clapp,* 11 *G. & J.,* 8. The trustee reports the offer of the bidder to the. court and its order ratifying the sale, completes the contract. It is believed the case of *Winchester, trustee of Williams* vs. *The Union Bank,* 2 *G. & J.,* 73, and the other cases founded upon our insolvent laws, do not apply to the case now under consideration. The doctrine settled by those cases is, that a trustee of an insolvent debtor cannot act in that capacity at all, until he has given bond and security, without which he is not invested with the character and rights of a trustee in any respect or to any extent. But when this court appoints by its decree, its trustee or agent to sell property, and requires him to give bond for the faithful performance of his duty, no reason is apparent why, if it thinks fit, it may not ratify a sale made by such trustee, even though he omits to give bond, the order of ratification being equivalent to a previous delegation of the power to sell. That the trustee may deviate from the terms of sale prescribed by the decree, and that a private sale may be ratified by the court, though the trustee is directed to sell at public sale, if the sale itself is advantageous, is conclusively settled. *Glenn* vs. *Clapp,* 11 *G. & J.,* 8. And it would be difficult to assign a reason why the court, the actual vendor, may not confirm a sale though its agent, the trustee, has

not obeyed its direction in giving the bond required by the decree.

But in this case, I shall not pass a final order ratifying the sale, until the trustee shall have given the requisite bond, because I do not now propose to say that the bond may be dispensed with altogether. All that I now design to decide is, that the sale is not void, because the trustee may have omitted to give bond before it was made, but I will require him to give it before finally ratifying the sale, that the parties entitled to the money may have the security, which the decree intended they should have, for its proper application.

Since the foregoing was written, the trustee has filed a bond, which has been approved, and an order will, therefore, be passed ratifying the sale.

ALEXANDER and GILL, for Exceptants.

J. J. SPEED, for the other Parties.