THE BANK OF COMMERCE *vs.* THOMAS M. LANAHAN,
Trustee, and others.

*Deed of Trust as distinguished from a Mortgage—Presumption
of Good faith and Diligence on the part of a Trustee in the
discharge of his duty—Insufficient ground for Setting aside
a Trustee's Sale—Inadequacy of price.*

A deed dated the 17th of November, 1874, from Edwin Walters and wife to
Thomas M. Lanahan, trustee, contained the following recital: "Whereas,
the said Edwin Walters stands justly indebted unto sundry persons in vari-
ous sums and amounts of money which he is at this time unable to pay; and
whereas, he has asked an extension of his creditors of their several claims
of nine, twelve, fifteen and eighteen months, with interest from the day of
the execution of these presents; and whereas, said request has been granted
to said Walters upon the condition that he shall execute these presents for
the purpose of securing the payment of their respective claims in the manner,
upon the conditions and with the priorities hereinafter provided, as the same
shall fall due and mature. Now, for the *purpose of securing the payment of
his said creditors* their respective claims, as above set forth, these presents
are executed." The deed then continued: "Now, in consideration of the
premises, together with the sum of five dollars, &c.," "the said Edwin
Walters and Virginia Caroline Walters, his wife, do hereby bargain and sell,
assign, transfer and make over and convey to the said Thomas M. Lanahan,
his heirs executors, administrators and assigns, all and singular their right,
title, interest and estate, both at law and in equity, jointly and severally, in
and to all and singular, those several pieces or parcels of land and improve-
ments, situated," &c. [Here followed a description of the property intended
to be conveyed ] "To have and to hold, &c., unto the said Thomas M.
Lanahan, his heirs and assigns forever. In trust and confidence, neverthe-
less, and for the purposes following, that is to say: That if the said Edwin
Walters shall pay each and all of his said creditors—having claims against
him on the day of the date of these presents—the amounts due and owing
to them, with interest, as the same shall fall due and mature as above set
forth and provided for, in nine, twelve, fifteen and eighteen months, then

Bank of Commerce *vs.* Lanahan, Trustee, *et al.*

this deed of trust shall be void, and the said Thomas M. Lanahan, trustee as aforesaid, shall re-convey the above described property to the said Edwin Walters, his heirs or assigns." It was further provided that in case of default in the payment of any one or more of the said creditors, any instalment or portion of their claim as the same should mature, it should be lawful for the said Lanahan to take possession of the said property, and to sell the same in his discretion at public or private sale, and for the most money that could be realized therefor, &c. The proceeds of such sale to be applied— 1st. To the payment of all expenses, including commissions to the trustee. 2nd. To the payment of a judgment in favor of said Lanahan of $30,000, with interest. 3rd. The balance to be applied to the payment of the other creditors of said Walters, who were such on the day the deed was executed, and if anything remained, the same to be paid to the said Walters or his assigns. It was covenanted in the deed that until default the grantor should retain the possession and use of the property. The instrument was duly acknowledged, and the grantee made affidavit that the consideration was true and *bona fide* as therein set forth. HELD:

1st. That the foregoing deed was not a technical mortgage within the contemplation of section 5 of Article 64 of the Code, but a deed of trust, clearly denominated such by section 55 of Article 24 of the Code.

2nd. That being a deed of trust and not a mortgage within the meaning of section 5 of Article 64 of the Code, it was not necessary to the validity of a sale under the deed, that it should be made in the county where the property was situated, and advertised in a newspaper printed in said county.

Bad faith or negligence on the part of a trustee in the sale of trust property, will not be presumed, but, on the contrary, the presumption is that he has discharged his duty faithfully, and that presumption prevails until it is made to appear otherwise by those seeking to impeach the sale.

The fact that a sale of trust property took place on the day of the general State election, does not, of itself, constitute a sufficient ground for setting it aside.

Inadequacy of price alone, is not sufficient to vacate a sale, unless it be so gross and inordinate as to indicate some mistake or unfairness in the sale, for which the purchaser is responsible, or misconduct or fraud on the part of the trustee.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The appeal in this case was taken from an order of the Court below, passed on the 3rd of January, 1876, finally

ratifying a sale of certain real estate, situated in Baltimore County, made by Thomas M. Lanahan, trustee, by virtue of the following deed :

This indenture, made this 17th day of November, 1874, between Edwin Walters and Virginia Caroline Walters, his wife, of the City of Baltimore and State of Maryland, of the one part, and Thomas M. Lanahan of the same place, trustee, as hereinafter stated, of the other part, witnesseth, whereas the said Edwin Walters stands justly indebted unto sundry persons in various sums and amounts of money which he is at this time unable to pay ; and whereas, he has asked an extension of his creditors of their several claims of nine, twelve, fifteen and eighteen months, with interest from the day of the date of the execution of these presents ; and whereas, said request has been granted to said Walters, upon the condition that he shall execute these presents for the purpose of securing the payment of their respective claims, in the manner, upon the conditions and with the priorities hereinafter provided, as the same shall fall due and mature.

Now for the purpose of securing the payment of his said creditors their respective claims as above set forth, these presents are executed.

Now in consideration of the premises, together with the sum of five dollars in hand paid by the party of the second part to the parties of the first part, the receipt whereof is hereby acknowledged, the said Edwin Walters and Virginia Caroline Walters, his wife, do hereby bargain and sell, assign, transfer, make over and convey to the said Thomas M. Lanahan, his heirs, executors, administrators and assigns, all and singular, their right, title, interest and estate, both at law and in equity, jointly and severally, in and to all and singular, those several pieces or parcels of land and improvements, situated in Baltimore County, in the State of Maryland, and likewise in the Parishes of St. Martin and St. Mary, in the State of Louisi-

ana, and severally described as follows: [Here followed a description of the property.]

Together with all the buildings and improvements situated upon each and all of the above described tracts of land situated in Maryland and Louisiana, and all the rights, privileges and appurtenances thereunto belonging, and together with all and singular the personal property of every kind and description now upon the premises above described, in the States of Maryland and Louisiana.

To have and to hold all of the above described property real and personal, situated as aforesaid, in the States of Maryland and Louisiana, unto the said Thomas M. Lanahan, his heirs and assigns forever. In trust and confidence nevertheless, and for the purposes following, that is to say: That if the said Edwin Walters shall pay each and all of his said creditors, having claims against him, on the day of the date of these presents, the amounts due and owing to them, with interest, as the same shall fall due and mature, as above set forth and provided for, in nine, twelve, fifteen and eighteen months, then this deed of trust shall be void, and the said Thomas M. Lanahan, trustee as aforesaid, shall reconvey the above described property to the said Edwin Walters, his heirs or assigns. But in case the said Edwin Walters shall fail to pay at maturity any one or more of his said creditors any instalment or portion of their respective claims or demands against him as the same shall mature, then it shall be lawful for the said Thomas M. Lanahan, trustee as aforesaid, to at once take possession of all of the above described property, and to sell the same in his discretion at public or private sale, and for the most money that can be realized therefor, and upon such terms as to the credit payments as he shall think best calculated to promote the interests of all parties concerned in this trust, and the proceeds of all such sales shall be applied and appropriated by the said trustee as follows, that is to say:

*First.* To the payment of the expenses incurred in the creation and execution of this trust, including such commissions to the said trustee for his trouble and responsibility in the premises, as is usually paid to receivers for like services by Courts of Equity in the State of Maryland.

*Secondly.* To the payment of Thomas M. Lanahan, of Baltimore city, his personal representative or assigns, the full amount of a judgment recovered by said Lanahan against said Edwin Walters, in the Circuit Court for Baltimore County, in the State of Maryland, on the 21st day of August, 1874, for thirty thousand dollars, with interest until paid, and costs.

*Thirdly.* The balance remaining in the hands of the said trustee is then to be applied to the payment of all the other creditors of the said Edwin Walters, to whom he is indebted on the day of the date of the execution of these presents, in full, if sufficient therefor, and if not sufficient, then ratably and proportionably, and if then there shall remain a balance in the hands of the said trustee, the same shall be paid over to the said Edwin Walters or his assigns. It is distinctly understood and agreed that until default be made by the said Edwin Walters, in payment of some one or more of his said creditors, existing at the time of the execution of these presents, it shall be lawful for the said Edwin Walters to retain the possession and use of . the property hereinbefore described, provided he shall keep said property sufficiently insured in the meantime, with a provision in the policies of insurance that if any loss is sustained by fire, the insurance money is to be paid over to the said trustee for the benefit of the creditors of said Walters as provided for in this instrument. But if said Walters shall fail to keep said property insured as aforesaid, then it shall be lawful for said trustee to take possession of the same and sell it for the benefit of the creditors as above provided. It is also agreed, that it shall be lawful for the said trustee,

if he shall deem it advisable and for the interest of the creditors, at any time after the execution of these presents, and before the maturity of any of the payments due by said Walters to his said creditors, and before any default made by said Walters in the premises, to make sale and conveyance of any or all of the above described property, provided the said Edwin Walters shall give his assent in writing to such sale, and when said sale shall be thus made, the trustee shall appropriate the proceeds to the payment of the creditors of said Walters as above provided. And the said Edwin Walters and Virginia Caroline Walters, his wife, covenant to execute such further assurances as may be necessary to confirm these presents.

The deed was duly acknowledged, and the grantee made affidavit that the consideration was true and *bona fide* as therein set forth.

Walters having made default in the payment of the first instalment due and owing, as provided in the deed, the trustee proceeded to sell certain property mentioned in the deed, located at Canton, in Baltimore county. The notice of sale was advertised in the Baltimore Sun and Baltimore American, two newspapers published in Baltimore city, and was sold on the 2nd day of November, 1875, at the Exchange Sales Rooms in said city for the sum of $31,500. The Bank of Commerce, the holder and owner of four promissory notes for $2000 each, made and signed by Edwin Walters, payable to the order of Edward McCann, and by him endorsed to the Bank, filed exceptions on the 13th of November, 1875, to the ratification of the sale. These exceptions are set out in the opinion of the Court. The four promissory notes held by the exceptant, constituted a part of the indebtedness intended to be secured by the aforegoing deed of trust. McCann was one of the creditors of Walters who united in the agreement for extension, and recommended the ratification of the sale. A commission issued, under which evidence

26                    v. 45.

was taken and returned.    The exceptions were overruled, and the sale was finally ratified.

The cause was argued before BARTOL, C. J., MILLER, .and ALVEY, J., and the decision was participated in by ROBINSON, J.

*D. Eldridge Monroe*, for the appellant.

The instrument of writing, executed by Edwin Walters and wife, to Thomas M. Lanahan, is a mortgage within the meaning of Art. 64, of the Code of Public General Laws, and the property therein mentioned, located in Baltimore county, should have been advertised and sold in the manner prescribed in said Article, sections 7 and 14. (See also *Public Local Laws, Art. 3, section* 134.)    It was the conveyance of property as a security for the payment of an indebtedness in case of default, and clearly comes within the definition of Chancellor KENT, viz., " a mortgage is the conveyance of an estate by way of a pledge for the security of a debt, and to become void on the payment of it."    4 *Kent's Comm.*, 136; *Wilson, et al. vs. Russell, et al.*, 13 *Md.*, 494; *Flagg vs. Mann, et al.*, 2 *Sumner*, 533; *Woodruff vs. Robb*, 19 *Ohio*, 212; *Story's Equity*, 1018; *Wilcox vs. Morris*, 1 *Murph.*, (*N. C.*,) 116; *Johnson's Ex'r vs. Clarke*, 5 *Ark.*, 321; *Sargent vs. Howe*, 21 *Ill.*, 149; *Crosby vs. Huston*, 1 *Texas*, 240–41; 2 *American Law Register*, (*new series*,) 641, *et seq.*

This view of the law is consistent with the various decisions of this Court.    *Charles vs. Clagett*, 3 *Md.*, 82; *Stockett vs. Holliday*, 9 *Md.*, 492; *Carson vs. Phelps*, 40 *Md.*, 73; *Mackintosh vs. Corner*, 33 *Md.*, 605; *Hooper vs. Knell*, 31 *Md.*, 555; *Wilson vs. Russell*, 13 *Md.*, 494; *Snowden vs. Pitcher & Wilson*, ante, *p.* 260.

If the instrument in question be a mortgage, within the spirit and meaning of Art. 64 of the Code, the sale was illegally made, and this Court will not ratify it, as

notice of the sale was not advertised in a newspaper published in the county in which the property was located, nor was it offered for sale in said county. If proper notice be not given, chancery will set aside the sale. 4 *Kent's Comm.*, 190; 6 *Madd.*, 15; 2 *American Law Register*, (*N. S.*,) 713, *et seq.* If a statute points out a particular mode of notice, no other mode, even though it be a better one, can be substituted. *Dutton vs. Cotton*, 10 *Iowa*, 408.

The fact that the instrument clothes the trustee with power, in his discretion, to sell at public or private sale, does not release him from the obligation to sell the property in the manner provided by law. Having elected to sell at public sale, he was bound to give legal notice of the same and make sale in a legal manner.

The power to sell by the trustee was derived from the instrument itself, and was a power coupled with a trust; and the trustee being clothed with large discretionary power, whether it be a mortgage or deed of trust, he was bound to exercise that diligence and caution which a careful and prudent owner would observe in the sale of his own property. *Gould, Trustee, et al. vs. Chappell & Gould*, 42 *Md.*, 466, *and cases therein cited; Hubbard and Wife vs. Jarrell*, 23 *Md*, 66.

No prudent owner would have brought this property to the hammer on a day so injudicious,—the day of the State election—and under circumstances so disadvantageous; nor would he have sold it at a price so depreciated. The trustee must not only use good faith, but he must use every requisite degree of diligence to bring the property to sale under the best possible circumstances. *Gould, et al. vs. Chappell and Gould*; 42 *Md.*, 466; 2 *American Law Register*, (*N. S.*,) 712, *and cases therein cited.*

*Richard J. Gittings*, for the appellees.

The instrument in question is not a mortgage, but a deed of trust. It has neither the form nor the distinctive

provisions of a mortgage.   A mortgage is a security to the mortgagee.   This is a conveyance for the benefit of *all* the creditors of the grantor having claims against him, at the time of its date.   A mortgage must, under the statute, express the sum or sums of money for the payment of which it is intended the mortgage property shall be charged.   This deed, except as to the judgment debt, an encumbrance necessarily to be paid irrespective of the deed, specifies no amounts, and could not have undertaken to *specify* them, consistently with its design—being intended for the security and benefit of all creditors, without distinction, known or unknown, and whatever the amount of their respective demands.   There are several provisions in it, either unnecessary in a mortgage, as that for a reconveyance by the trustee, in the event of the grantor's paying all his debts within the stipulated period, or quite beyond the scope of a mortgage, as the power of sale given the trustee, with the assent of the grantor, before default, coupled with a trust to apply the proceeds to the payment of the creditors.   And, while the instrument explicitly exhibits its own nature and purpose, and declares itself to be a deed of trust for creditors, it appears from the written agreement under which it was executed, that it would have been a gross perversion to have turned it into anything else. The agreement stipulated for "a deed of trust" which should "provide, first, for the payment of the liens and encumbrances due and owing upon the property, and secondly, for the payment of *all the other creditors* of said Edwin Walters, in equal proportions, and the balance, if any, to be paid over to said Edwin Walters."

Deeds for the protection of creditors may be divided into three classes.   The first includes mortgages properly so called, that is, conveyances from the debtor to the creditor, expressed to be for the security of indebtedness due the latter, or for his indemnification against a particular loss, and with a clause of defeasance contained in the in-

strument. In such case, while the conveyance, after failure to perform the condition within the time specified, is apparently absolute, a purchaser from the grantee, without statutory aid given to the sale, does not acquire the land, but only the charge upon the land. In this class, or amongst mortgages properly so called, are embraced mortgages in trust, where the debts are specified, and the creditors either named, or designated and described in the instrument, but because of the great number of such creditors, or of other circumstances making a conveyance directly to them inconvenient, the mortgage is made to mortgagees who combine the office of trustees with that of mortgagees. These instruments, having the form of mortgages, are attended in general with the same statutory incidents. The second class consists of conveyances which are absolute in form, but being intended as securities of debt only, Courts of equity, upon proof of the fact, will give effect to the intention, except as against the rights of *bona fide* purchasers, or other intervening equities. The third class consists of deeds of trust like the present. It is believed that the provisions of the Code, under the Title "Mortgages," which have been invoked by the appellant, Art. 64, sections 7 and 14, have reference to instruments of the *first* class only, namely, mortgages properly so called. A reason can be perceived why guards or restrictive provisions of this kind should be thrown around such instruments—mortgages intended as such and given as the ordinary security for debt—but none whatever for applying them to conveyances to trustees for the payment of creditors generally. *Charles vs. Clagett*, 3 *Md.*, 82 ; *Stockett vs. Holliday*, 9 *Md.*, 480, 492, 499 ; *White vs. Malcolm*, 15 *Md.*, 541 ; *Phillips vs. Pearson*, 27 *Md.*, 256 ; *Reeside vs. Peter*, 33 *Md.*, 120 ; *McIntosh vs. Corner*, 33 *Md.*, 598, 607.

ALVEY, J., delivered the opinion of the Court.

This appeal presents the case of exceptions to a sale made under a deed of trust, and reported for ratification by the Court, as required by the Code, Art. 81, secs. 107 and 111, as re-enacted with amendments by the Act of 1874, chapter 483.

The deed was made by the grantor in pursuance of an agreement with his creditors for an extension of time on his indebtedness; and the appellant, according to the allegation in the exceptions filed, is the holder of part of the evidences of such indebtedness of the grantor intended to be secured by the deed, and has thus become interested in the execution of the trust.

The ratification of the sale is excepted to on several grounds: First, because the property, although situated in Baltimore county, was sold in Baltimore city, regardless of that provision of the Code, Art. 64, sec. 14, which requires that all mortgage sales shall be made in the county or city where the mortgaged premises are situated. Secondly, because the notice of sale was not given by advertisement in some newspaper printed in Baltimore county, where the property is situated; the Code, Art. 64, sec. 7, requiring that all mortgage sales made in pursuance of the power authorized to be inserted in any deed of mortgage, where the notice is not provided for in the mortgage, or otherwise agreed upon, shall be made after twenty days notice of the time, place and terms thereof, by advertisement in some newspaper printed in the county where the mortgaged premises may be located. Thirdly, because the sale was not fairly made; that it was made on the day of a general State election; and that the property was sold for a grossly inadequate price.

The two first grounds relied on, those relating to the notice and the place of sale, are involved in and dependent upon the question, whether the deed of the 17th of November, 1874, under which the sale was made, is a mort-

gage, such as is contemplated by the Code, Art. 64, sec. 5, which provides that in all mortgages there may be inserted a clause authorizing the mortgagee, or any other person to be named therein, to sell the mortgaged premises; the following sections, 7 and 14, before referred to, having reference to the manner of executing the power authorized to be inserted by the 5th section.

1. As to the question of the character of the deed, upon careful examination of its provisions, we are of opinion that it is not a technical mortgage, within the contemplation of the 5th section of the 64th Art. of the Code referred to, but a deed of trust, clearly denominated such by the Code, Art. 24, sec. 55. It is a deed of trust to secure debts; and while it has some of the attributes of a mortgage, yet it presents features which distinguish it from that class of security, strictly considered. By the legal, formal mortgage, as distinguished from instruments held to be mortgages by construction of Courts of equity, the property is conveyed or assigned by the mortgagor to the mortgagee, in form like that of an absolute legal conveyance, but subject to a proviso or condition by which the conveyance is to become void, or the estate is to be reconveyed, upon payment to the mortgagee of the principal sum secured, with interest, on a day certain; and upon non-performane of this condition, the mortgagee's conditional estate becomes absolute at law, and he may take possession thereof, but it remains redeemable in equity during a certain period under the rules imposed by Courts of equity, or by statute. 1 *Fish. on Mort.*, 7; *Jamieson vs. Bruce*, 6 *Gill & John.*, 72; *Evans & Iglehart vs. Merriken*, 8 *Gill & John.*, 39. And in accordance with this description of a strict legal mortgage, is the formula given in the Code, Art. 24, sec. 60. We do not, however, for a moment intimate that a mortgage can be in no other form than that here given; but the form to which we refer clearly indicates the attributes and essential qualities of a

strict legal mortgage, as distinguished from a deed of trust, such as that now before us. This deed was made for the benefit of all the grantor's existing creditors; and the grant was made to and the estate vested in but one of those creditors, in trust to secure his own debt and the debts of all the other creditors, in the manner and upon the terms specified in the deed. Lanahan is the trustee, and the creditors are *cestuis que trust*, not mortgagees, strictly and technically such. `Upon default of payment, these creditors, as mere *cestuis que trust* under the deed, could not take possession of the estate and apply the rents and profits to the discharge of their claims; nor have they any right of foreclosure, such as a mortgagee would have under a technical mortgage. *Charles vs. Clagett,* 3 *Md.*, 94, 95. Their only remedy is the enforcement of the trust, and to execute the trust requires the property to be sold. Indeed, if this instrument were declared to be a mortgage, as contended by the appellant's counsel it should be, it would be difficult to maintain its validity at all, except as to the claim of Lanahan, the trustee. His is the only claim the amount of which is mentioned in the deed; in fact he is the only creditor named; the names and amounts of none others are stated. Now it is provided by the Code, Art. 64, sec. 2, that "No mortgage or deed in the nature of a mortgage, shall be a lien or charge on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage, *and be specified and recited therein; and particularly mentioned and expressed to be secured thereby at the time of executing the same;* this not to apply to mortgages to indemnify the mortgagee against loss from being endorser or security." It is plain, therefore, that this deed would be seriously imperiled by declaring it to be a mortgage, or even a deed in the nature of a mortgage; as the amounts of the debts intended to be secured, with one exception, are not made

to appear on the face of the deed, nor specified and recited therein. This is not required in a deed of trust for the benefit of all the creditors of the grantor, such as that in the present case.

The case of *Wilson vs. Russell*, 13 *Md.*, 495, relied on by the counsel of the appellant, and where the instrument in question was sometimes spoken of as a deed in the nature of a mortgage, and sometimes as a deed of trust, does not support the position of the appellant's counsel in this case. There the deed was not a conveyance for the benefit of creditors generally, nor an assignment of the property of the grantors for the payment of their existing debts; but it was intended to secure two named parties the payment of an old debt, and certain notes agreed to be loaned under the deed; the amount thereof being specifically stated on the face of the instrument. It was not pretended, in that case, that the deed was a technical mortgage.

Being of opinion that the deed before us is not a mortgage within the meaning of the Code, Art. 64, sec. 5, it follows that the requirements of the 7th and 14th sections of the same Article of the Code have no application to the sale made and reported by the trustee in this case.

2. Having determined that the deed is not a mortgage, but a deed of trust, and therefore not within the meaning of the Code, Art. 64, sec. 5, the next question is, was the sale fairly made, and for a price that ought to be sanctioned by the Court? And upon careful examination of all the evidence that the record contains we can have no hesitation in saying that there is nothing disclosed that would have justified the Court below in refusing ratification of the sale. It is certainly true that the trustee was in duty bound to offer the estate under the best possible advantage for the interest of those for whom the trust was created. He was bound to due diligence in giving full

and proper notice, so as to invite full and fair competition at the sale; and he was further bound to act in perfect good faith throughout in his management in relation to the sale. He could not, in any degree, subserve the interest of one *cestui que trust* to the sacrifice or detriment of the rights of others equally interested. But bad faith or negligence on the part of the trustee will not be presumed, but, on the contrary, the presumption is that he has discharged his duty faithfully, and that presumption prevails until it is made to appear otherwise by those seeking to impeach the sale. Sales like the present are not to be impeached by slight circumstances. It requires good and substantial grounds to justify the Court in setting them aside when regularly made; for otherwise all confidence in their performance and security would be destroyed, and the public would be loth ever to bid for property thus offered. The principles upon which the Court acts in reference to these sales, when sought to be set aside, are well stated by the Vice-Chancellor, in the case of *Woodhull vs. Osborne,* 2 *Edward's Rep.,* 616, quoted with approval by this Court in *Johnson vs. Dorsey,* 7 *Gill,* 287. It was there said, that "Where a stranger or third person becomes the purchaser in good faith, something more than a mere offer of a higher price must appear, to induce a re-sale; such as fraud or misconduct of the master, or other person, having the control of the sale, or surprise upon the party interested, or his having been misled as to the time and place of sale. Where circumstances of the latter description are relied upon, the party must show they proceeded from or were caused by the purchaser, or some person connected with or having the management of the sale. If he be of full age and under no disability, he cannot be permitted to allege his own negligence or inattention, as the cause of his surprise or mistake." Here there is no pretence that there has been surprise or mistake on the part of those repre-

Bank of Commerce *vs.* Lanahan, Trustee, *et al.*

senting the appellant. More than usual diligence appears to have been observed in giving notice in all directions where bidders were likely to be found ; and all the creditors, as well as the public generally, appear to have had the amplest notice of the time and place of sale. Many of the creditors appear to be persons of large means, and if they did not attend the sale and make the property bring a better price, it would seem to be their own fault. Several of the creditors were present at the sale, but did not bid. The sale was conducted by an experienced auctioneer, at the Exchange Sales Rooms in the city of Baltimore, within convenient distance of the location of the property, and there is no suggestion that there were any unfair means used in the mode of conducting the sale ; but, on the contrary, the proof shows that the fullest opportunity was afforded every one to bid who desired to do so. That the sale took place on the day of the general State election can, of itself, certainly form no sufficient ground for setting it aside. It is not shown that a single individual was prevented from attending the sale by reason of the election. The proof is that the attendance was fair, the number being about as great as usually attend such sales. And as to the inadequacy of price, that is not of a character to justify the rejection of the sale. In regard to the saleable value of property there is always more or less diversity of opinion, even among those who are supposed to be competent judges. Every controverted case in regard to the value of property exemplifies the truth of this remark. But, with all the diversity of opinion upon this subject, no witness ventures to say that he will give more than the bid reported, if the property should go to re-sale. Indeed, they say they would not ; and there is nothing in any portion of the evidence that gives any degree of assurance that, if the property were put up at re-sale, it would bring more than the price reported. Why then order a re-sale? The sale

reported should not be set aside and a re-sale ordered as a mere experiment. That is forbidden both by reason and the well established doctrine of the law upon the subject. No principle is better established or more uniformly applied than that mere inadequacy of price, standing by itself, is not sufficient to vacate a sale, unless it be so gross and inordinate as to indicate some mistake or unfairness in the sale, for which the purchaser is responsible, or misconduct or fraud on the part of the trustee. This is the doctrine maintained by this Court in the cases of *Cohen vs. Wagner*, 6 *Gill*, 236, and *Johnson vs. Dorsey*, 7 *Gill*, 269, where the subject is fully considered. The proof in this case wholly fails to show any such gross inadequacy of price, if inadequate at all, as to indicate that there was either mistake or unfairness in the sale, or that the trustee has been guilty of any misconduct in relation to it. Moreover, in considering the question of the ratification of this sale, it should not be overlooked that a decided majority of the creditors in interest have strongly recommended that the sale should be ratified, being of the opinion, as they state, that the property would not sell for as much on re-sale as the price reported by the trustee.

Upon the whole, finding no sufficient ground for vacating the sale reported by the trustee, the order appealed from will be affirmed, with costs to the appellees.

<div style="text-align:right">

*Order affirmed, and*
*cause remanded.*