[No. 3643.]

## LATHROP v. TRACY.

**1. APPELLATE PRACTICE—ASSIGNMENT OF ERROR.**

Alleged error based upon the admission or rejection of evidence, though argued by counsel, cannot be considered unless presented by assignment of error as required by Rule 11—Rules Supreme Court.

**2. SAME—CONFLICTING EVIDENCE.**

Where there was legal and competent evidence to support the finding of facts, the more material part of which was oral, the fact that part of the evidence was in the form of deposition does not abrogate, but only *pro tanto* affects; the rule that the findings of the trial court upon conflicting evidence should not be disturbed.

**3. TRUSTEE'S SALE—HIGHEST AND BEST BID.**

If no one but the owner of the note bids at a trustee's sale, his offer in the sense of the term as used in the trust deed, is the "highest and best bid." Where the trust deed provides that the trustee must sell

for the highest and best price, this does not mean that no sale is legal unless there are three or more bids. If only one *bona fide* bid is made, it is, in the language of the instrument, "the highest and best bid."

4. SAME—COMPETITION.

Where a full and fair opportunity is given to bidders to participate and there is no collusion, the requirement as to competition is fulfilled.

5. SAME—HOUR OF SALE.

Sale advertised by trustee to take place at ten o'clock, but which was actually made at half past ten o'clock, was not a departure from the notice. The law does not recognize fractions of an hour. Under the notice the trustee was not required to sell precisely at ten o'clock, but might sell at any time during the hour.

6. SAME—INADEQUACY OF PRICE.

Mere inadequacy of price is no ground for setting aside a trustee's sale, otherwise properly conducted.

7. SAME.

The fact that on account of the stringency of the times property did not bring its full value, and a party thereby loses her equity in the property, is unfortunate, but is no legal reason why the court should depart from the unquestioned rules of law that govern such cases and arbitrarily give plaintiff a further opportunity to protect herself, when she does not even claim that another sale would enable her to do so.

*Appeal from District Court of Arapahoe County.*

Mr. SAMUEL H. BAKER, for appellant.

Mr. A. B. SEAMAN, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The object of the action,—which is brought against the purchaser, at a trustee's sale, of three lots situate in the city of Denver,—is to cancel the trustee's deed, as against the plaintiff, the alleged equitable owner, on the ground that the same, as to her, is invalid. The trial was to the court without a jury, whose findings of fact and law were for the defendant, resulting in the dismissal of the action. From the judgment plaintiff has appealed.

The assignments of error are three in number: *first*, the

court erred in rendering and entering judgment in favor of the defendant and against the plaintiff, when, under the law and the evidence, said judgment should have been for the plaintiff; *second*, the court erred in this, that the finding and judgment and each of them is against the law; *third*, the court below erred in this, that the finding and judgment and each of them is contrary to the evidence in the case. Though separately stated, as the rule requires, they are tantamount merely to an assignment that the decree is contrary to the law and the evidence.

We premise by saying that the alleged errors of the court in admitting and rejecting testimony, argued by the appellant, cannot be considered, for no assignment of error has been predicated thereon, as required under Rule 11. It is more satisfactory, however, to say that even a casual inspection of the record shows that plaintiff was not prejudiced by any such ruling of the court upon the evidence.

A brief statement of the facts at the outset will shorten the opinion, as well as more clearly bring into view the points urged for a reversal. Plaintiff was the equitable owner of these lots and took a conveyance thereof subject to the incumbrance of a trust deed securing the payment of a five thousand dollar note. The maker of the note being in default, the trustee, on the proper request, and under the authority conferred by the trust deed, proceeded to advertise and sell the property. At the sale it was bid in for the beneficiary at $3,000, and that amount was indorsed as a credit on the note.

The plaintiff charges in her complaint that the sale was invalid because the newspaper in which appeared the advertisement of the notice of sale was not of the character contemplated by the trust deed; that the sale was not held at the time advertised, or conducted in the proper manner; that the property brought an inadequate price; that there was no competition in the bids, and no *bona fide* purchaser. At the trial, however, the irregularity as to the advertisement was abandoned, and the defects argued by counsel are under the other specifications.

1. All questions of fact were determined against the appellant by the trial court, chiefly upon uncontroverted evidence, for only as to the manner of conducting the sale was the evidence at all in conflict, and that was not serious. As there was legal and competent evidence to support the finding, we might summarily dispose of this phase of the case by invoking the general rule prevailing in appellate tribunals, and refuse to disturb a judgment predicated upon such evidence, though there was a conflict therein. But the appellant contends that inasmuch as some of the evidence was in the form of depositions the foregoing rule is inapplicable and that it is our duty in such a case to sift the evidence with a view to determine on which side it preponderates. By far the larger and more material part of the evidence was oral testimony by witnesses heard in the presence of the court, and so the case does not, as contended by appellant, entirely fall without this rule, but, at most, is modified only as to the depositions.

Whatever rule we adopt here, the result is the same; as we cannot say that the findings are wrong. Indeed, as we view the case, there was no real conflict except as to the tone of voice in which the trustee cried the sale, and, as to that, if credence was given to his testimony, the court was abundantly justified in finding that he did his full duty. Moreover, no claim is made by appellant's counsel that there is not some competent evidence to uphold this particular finding.

2. Upon the legal propositions correct principles were applied. There was only one bidder at the sale, the note owner (through his agent) and the trustee's deed was made to him. It is said, therefore, that there was no competition, and the highest and best price was not secured, and there was no *bona fide* purchaser. Neither position is tenable. The trust deed expressly provides that the owner of the note may become the purchaser. Neither the trustee nor the owner of the note can compel other persons to bid at a sale. If, therefore, no one but the owner bids, his offer, in the

sense of the term as used in the trust deed, is the " highest and best," and where a full and fair opportunity is given to bidders to participate, and there is no collusion, the requirement as to competition is fulfilled. Where only two bids are made, one may be " higher and better" than the other, but it is not the " highest and best,"—that is, if we speak with the utmost precision and accurately distinguish between the three degrees of comparison. It is only where there are three or more bids that one may be said to be the " highest and best." But where the trust deed declares the trustee must sell for the highest and best price, this does not mean that no sale is legal unless there are three or more bids. If only one *bona fide* bid is made, it is, in the sense of the language employed in the instrument, " the highest and best bid." The contention of the appellant to the contrary savors too much of subtlety to receive judicial sanction when contracts of the character in question are construed.

3. The sale was advertised for ten o'clock A. M. It was about half past ten o'clock when the bid was accepted and the property declared sold. There is no satisfactory evidence (in fact none whatever) that any person intending to bid left before the sale began, or was misled into believing that it would not occur because the trustee did not begin reading the notice at the precise minute advertised. If there was any necessity for justifying the trustee in waiting for thirty minutes, the record furnishes it in the fact that several other like sales at the same hour and place were being cried, which, as appellant's counsel upon another branch of the case contends, might tend to confuse bidders, and prevent information as to what was taking place. This act is claimed to be a departure from the notice of sale, but it is not. In the case of *McGovern v. Union Mut. Life Ins. Co.*, 109 Ill. 151, this precise question was before that court. There the property was advertised to be sold at the hour of eleven o'clock, but the sale did not occur until between half past eleven and twelve o'clock. The claim there was the same as here, that the trustee must sell the property at the precise hour adver-

tised. Mr. Justice Craig, speaking for the court, so effectually disposes of this contention that we take the liberty of giving his exact language:

" The law does not recognize fractions of an hour or fractions of a day, and when a notice says that a sale of land will be made at the hour of eleven o'clock, the practical common sense of the language used is, that the sale will be made during the hour of eleven, or between eleven and twelve o'clock. This is upon the ground that eleven o'clock means from eleven until twelve,— in other words, it is eleven o'clock from eleven to twelve. It would have been impossible for the trustee to have made this sale precisely at eleven o'clock. That is but an instant, and before the trustee could have read two lines of the advertisement the time would have been gone. The law does not expect or require impossible things, and a moment's reflection is enough to convince any reasonable person that the trustee, under this notice was not required to appear and sell precisely at eleven o'clock, but the notice gave him the right to appear at any time during the hour and make the sale."

Approving this decision, see *Lester v. Citizens' Savings Bank*, 17 R. I. 88.

4. The defendant offered no evidence as to the value of the property; that produced by the plaintiff is substantially harmonious. It was estimated at from $7,500 to $10,000. The plaintiff's own witnesses, however, admitted that at the time of the sale, owing to the financial depression following the panic of 1893, it was almost impossible to fix any market value for lots situate as these are. There were no sales at all, except under foreclosures, and while the foregoing were the estimated values, the witnesses did not pretend to say that any such price could then have been obtained in the market.

Mere inadequacy of price is no ground for setting aside a judicial, or trustee's sale, otherwise properly conducted. There is not a particle of evidence in this record of any irregularity in the sale, unless the alleged inadequacy of price is such,

and that, of itself, is not ground for declaring the sale invalid. At best, it is only a circumstance which, taken in connection with proof of irregularity, surprise, accident, mistake or fraud, or either or all together, sometimes leads to the setting aside of sales of this character. The very cases cited by the appellant so hold. Among others, see *Means v. Rosevear*, 42 Kan. 377; *Bixly v. Mead*, 18 Wend. 611. See, also cases cited in 26 Amer. & Eng. Ency. of Law, 952; *Loveland v. Clark*, 11 Colo. 265, which is a leading case.

But if there was some evidence of any of these infirmities, plaintiff's own conduct would be an insuperable objection to granting relief. Neither in her pleading nor at the trial did she offer to do equity. There is no evidence at all that the property would probably bring more, if resold. Plaintiff does not offer to bid more, or to bid the amount of the note, or any larger sum, or claim that any other person would be likely to do so. Nor does she offer to pay any of the costs of the former sale or the accrued interest or delinquent taxes. In fact, she admits that she was financially unable to do any of these things, or to purchase the property or bid at the sale. It may be, and doubtless is, unfortunate that she must lose her equity in this property because, on account of the stringency of the times, the property did not bring its full value. But this is no legal reason why the court should depart from the unquestioned rules of law that govern such cases and arbitrarily give to the plaintiff a further opportunity to protect herself, when even she herself does not claim that another sale would enable her to do so. *B. & B. Placer Co. v. Maxwell*, ante, p. 87 (48 Pac. Rep. 815); 1 Pomeroy's Eq. Jurisp. (2d ed.) § 393, note 4, and cases cited; *Loney v. Courtnay*, 24 Neb. 580; *Mass. Mut. Life Ins. Co. v. Boggs*, 121 Ill. 119; *Duncan et al. v. Dodd et al.*, 2 Paige's Chan. 99.

The very contingency has happened in this case that frequently occurs in such circumstances. Where one buys, as a speculation, an equity in property, hoping to sell on a rising market, to clear off the prior lien and make a profit, he necessarily runs the risk of a decline in values, the loss of

the original investment, if any, and the anticipated profits. All this must have been contemplated when the purchase was made, and in the absence of some recognized equitable ground for relief, a foreclosure sale will not be set aside merely because it results in loss to the owner of the equity.

The court below, upon legal and sufficient evidence, having determined all of these questions of fact against the plaintiff, and the law being correctly applied thereto, the judgment should be affirmed, and it is so ordered.

*Affirmed.*