CHARLES B. HUNTER, W. FRANK THOMAS AND
ENOCH HARLAN,

*vs.*

HIGHLAND LAND COMPANY OF BALTIMORE
CITY.

WALTER R. RUPP, EDWARD G. TURNER, MABEL.
E. TIPPETT, ET ALS.,

*vs.*

SAME.

*Trustees' sales: mortgage foreclosure; mere inadequacy of price;*
*time and place of making sale; differences of opinions*
*of witnesses as to value.*

Mere inadequacy of price is not sufficient to vacate a sale, unless it be so gross and inordinate as to indicate some mistake or unfairness in the sale for which the purchaser is responsible, or misconduct or fraud on the part of the trustee or mortgagee making the sale.                                              p. 647

It can not be objected to after a sale under foreclosure proceedings, that there was a delay in the proceedings when the

sale was delayed by the trustee from August to December for
the very purpose of enabling the mortgagor and others inter-
ested to avoid a foreclosure.                      p. 648

Where property sold under foreclosure proceedings had been
formerly subdivided and platted, but all trace of the lots, streets
and alleys had been lost and grown over by trees, weeds, grass
and bushes, and all the stakes lost or removed, so that it was
impossible in walking over the property to locate any lots, it was
*held,* that there was no obligation to sell or offer the property for
sale as separate lots, or to make the sale upon the property
itself.                                           p. 651

Mere differences of opinions of witnesses as to the value of
properties sold under a decree, furnish no ground for setting
aside a sale farily made, when the trustee or mortgagee acts in
entire good faith.                                 p. 652

A sale in equity should not be set aside and a re-sale made
as a mere experiment.                              p. 652

*Decided June 25th, 1914.*

Two appeals in one record from the Circuit Court for Bal-
timore County. In Equity. (BURKE, C. J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, and CONSTABLE, JJ.

*R. Lee Slingluff, W. Gill Smith, W. Herdman Schwatka*
and *Charles F. Harley* submitted the case on brief for the
appellants.

*Albert C. Ritchie* (with *Ritchie, Janney, Griswold &
Hamilton,* on the brief), for the Baltimore Trust Company,
substituted purchaser.

PATTISON, J., delivered the opinion of the Court.

The Highland Land Co., a body corporate, on July 25, 1912, executed and delivered to the Baltimore Trust Company, also a body corporate, a mortgage on certain real estate lying partly in Baltimore County and partly in Baltimore City, to secure a loan of sixty thousand dollars ($60,000.00). The aforesaid mortgage indebtedness was to be paid July 25, 1913, one year after the date of the execution of the mortgage and, by the terms of the mortgage, if it were not then paid, the right of foreclosure would exist. It was not paid at such time and because of such default the mortgage was on the 28th day of August assigned to one Chas. D. Fenhagen for the purpose of foreclosure, and on the following day proceedings were instituted in the Circuit Court for Baltimore County, sitting as a Court of Equity, and the mortgaged property was thereafter, on the 17th day of December, 1913, under the power contained in the mortgage, sold by said Fenhagen at public sale, at the court house door at Towson, to James Carey Martien for forty-two thousand dollars ($42,000.00). The sale so made to Martien was reported to the Court on the 19th day of December, and thereafter, on the same day, the Baltimore Trust Company, by order of the Court and with the assent of Martien, was substituted as purchaser of the property. On January 6th, 1914, Charles B. Hunter and W. Frank Thomas and Enoch Harlan, assignees of Charles B. Hunter, judgment creditors of the Highland Land Company, and the appellants in the first of these appeals, filed exceptions to the ratification of the sale to Martien.

There are five exceptions as shown by the record, but they may be stated in three, as follows:

1st. That the sale was made at "a grossly inadequate price";

2nd. That the sale of the property should not have been made at Towson, Baltimore County, Maryland;

3rd. That the sale was made at "a very disadvantageous time."

On the 8th of January, Walter R. Rupp and other creditors of the land company, appellants in the second of these appeals, also filed exceptions to the ratification of the sale made to Martien, the grounds thereof being the same as those above stated, made by the appellants in the first of these appeals. JUDGE BURKE, who sat in the lower Court, heard testimony upon the exceptions filed in each of these cases, and by his order of March 20, 1914, he overruled the exceptions and finally ratified and confirmed the sale. It is from that order that these appeals are taken.

As to the first of the above stated objections, the law is well established that mere inadequacy of price, standing by itself, is not sufficient to vacate a sale, unless it be so gross and inordinate as to indicate some mistake or unfairness in the sale for which the purchaser is responsible, or misconduct or fraud on the part of the trustee or mortgagee making the sale. *Glenn* v. *Clap*, 11 G. & J. 1; *Cohen* v. *Wagner*, 6 Gill, 236; *Johnson* v. *Dorsey*, 7 Gill, 269; *Hubbard* v. *Jarrell*, 23 Md. 66; *Bank of Commerce* v. *Lanahan, Trustee*, 45 Md. 396; *Mahoney* v. *Mackubin, Trustee*, 52 Md. 357; *Garritee* v. *Popplein*, 73 Md. 322; *Shaw* v. *Smith*, 107 Md. 523; *Vollum* v. *Beall*, 117 Md. 620; *Edgecombe Park Co.* v. *Finney*, 121 Md. 326.

We have very carefully examined the evidence in this case, and we find nothing that shows mistake or unfairness in the sale for which the purchaser can be held responsible, nor do we find anything indicating misconduct or fraud on the part of the mortgagee or any person connected with the sale. The exceptants conceded "that the advertisement of sale was sufficient, and that all due and proper publicity was given the same," and this is shown to be true by the record before us.

The property was advertised in the *Democrat and Journal*, a newspaper published in Baltimore County, and in the

*Daily Record* and in the *Baltimore Sun,* newspapers published in Baltimore City. In addition to this, a notice of such sale drafted by John J. Watson, President of the Highland Land Company, was mailed at his request to nearly one thousand persons whom he thought might be interested in the purchase of the property. In the advertisement the property was fully described, and the time, terms and manner of sale fully set forth, and we may add that the terms of sale were fair and reasonable.

The proceedings were instituted for the sale of the property so early as August 28th, and yet the sale was not made until the 17th of December following. This delay was occasioned in great part by the indulgence shown by the mortgagee and its representatives to the mortgagor and those interested in avoiding a sale of the property under the mortgage.

The land company or its representatives attempted to borrow money from other sources to pay off the mortgage indebtedness owing by it to the trust company, and the latter company or its representatives awaited patiently the result of such efforts, and it was not until late in November, after the efforts of the mortgagor to procure money with which to pay off said mortgage were shown to have been unsuccessful, that the property was advertised for sale in December.

We find nothing in the conduct of the mortgagee or those representing it indicating the least desire to take unfair advantage of the financial condition of the land company. It is shown by their conduct and by what was said by Mr. Ritchie, when upon the stand as a witness, that the mortgagee did not wish to become the owner of the mortgaged property, but merely wished to collect the mortgage indebtedness, with such costs as had then accrued, which amounted at such time to about sixty thousand dollars ($60,000.00). The wishes and requests of the mortgagor company and those interested in it, except that the sale of the property be

further or indefinitely postponed, were granted or complied with by the mortgagee and its representatives.

The property sold was unimproved and undeveloped for building purposes; parts of it were in woods and other parts overgrown with weeds and grass. There was nothing upon it, or at least on the greater part of it, to indicate that it was in course of development for building purposes. A plat had been made of this property and streets and alleys had been laid out upon it and lots located upon said streets and alleys, as shown upon said plat, but these streets and alleys were never opened or graded. The streets, alleys and lots had been staked and marked off, but these stakes had disappeared, for Mr. Ritchie tells us that when he and Mr. Poe went upon the property it was impossible to find a marked street or alley, or to locate any of the lots.

The witnesses offered by the exceptants placed the value of the property at a sum much larger than the amount at which it was sold, while the witnesses produced by the mortgagee company placed the value of it at or about the amount at which it was sold. The witnesses for the exceptants valued the lands as building lots, although the improvements and developments necessary to render it available for such purposes had not been made, and to make such improvements and developments the expenditure of much money will be required, and when so made there is no certainty of a speedy and profitable disposition of the lots, especially so in view of the protracted and unprofitable efforts of the president of the mortgagor company in disposing of nearby lots where the lands had been so improved and developed. The value so placed upon the land by such witnesses is, therefore, uncertain and more or less speculative. And, moreover, the fact that the mortgagee, as testified to by Mr. Ritchie, has expressed itself as being at all times ready and willing to turn over the property bought by it to the mortgagor or to anyone else, upon the payment to it of the amount of the mortgage indebtedness, with costs and expenses of sale,

amounting to about sixty thousand dollars ($60,000.00), and that this offer has never been accepted, not only by the mortgagor, but by any investor, strongly assails the correctness of the valuation of ninety thousand dollars ($90,000.00) placed upon it by the witnesses for the exceptants, which, after all, was their mere opinion of its value, and, as was stated in *Vollum* v. *Beall, supra,* the difference of opinion among witnesses as to the value of property will furnish no proper ground for disturbing a sale fairly made, when the trustee or mortgagee acts in entire good faith in making the sale.

The proof in this case does not show such inadequacy of price, if it be shown at all, as to indicate misconduct, fraud or unfairness on the part of the mortgagee, its assignee, or those having any connection with the sale of the land under the mortgage, and consequently no warrant can be found for disturbing the sale for such alleged inadequacy of price.

As to the objection that the property was not sold at the proper place, Mr. Watson, President of the land company, testified that in his opinion the property should have been sold on the ground "or at the Real Estate Exchange in Baltimore City," assigning his reason therefor that it would have been more convenient for the people who were in the market for such land to attend the sale. Mr. West, another witness offered by the exceptants, testified that if it were to be sold to individuals, it should have been offered upon the ground, but if it were to be sold to developers it should have been offered at the Real Estate Exchange. He, however, stated no reasons for the opinion so expressed. Mr. Martenet, also a witness for the exceptants, testified that in his opinion it should have been sold on the premises, and when asked how would the Real Estate Exchange compare with Towson, he answered: "I do not know that there is any particular difference." It will thus be seen that the witnesses for the exceptants were not in full accord as to where the sale should have been made. The record, however, does not disclose that

a single person who would have attended the sale had it been at either the Real Estate Exchange or upon the premises, failed to attend the sale at Towson. Mr. Ritchie, counsel for the mortgagee or its assignee, in stating the reasons why the property was sold at Towson, said that inasmuch as a greater part of the land was in the county, he thought it should be sold in the county, and not at the Real Estate Exchange in the City of Baltimore, and in stating why the property was sold at Towson and not upon the premises, he assigned the following reasons:

1st. That the lots to be sold were very much scattered; some far removed from others;

2nd. When upon the premises one lot could not be distinguished from another; nor could a lot on the plat be identified with such lot on the ground;

3rd. That "the property did not look particularly attractive to me. A good part of it was woods and a large part of it was also in weeds. It looked a great deal better to me on the plat than it did on the ground, and I wanted to sell in a way that I thought would bring the best possible price."

These reasons appear to us to be sufficient to have induced the mortgagee or assignee to make the sale at Towson, and we find nothing in the evidence to set aside the sale upon this objection urged against it.

The remaining objection is, that it was not sold at a proper time. Mr. Watson, witness for the exceptants, testified that he thought that December was a bad month in which to make the sale, and when asked why, said: "It is just before the holidays; it is just at a time when developers are practically closing up the year and probably would not go into anything until they found out where they were. And then I had another reason—if I thought they would wait until the currency question was settled; the money market was not very good, and for that reason I had asked Mr. Ritchie to try and put it off until the spring."

Other witnesses for the exceptants assigned their reasons why in their opinion the property should not have been sold in December, none of which, however, are more potent or convincing than those assigned by Mr. Watson, which, in our opinion, are not sufficient to warrant us in disturbing the sale when considered in connection with the reasons. assigned by Mr. Ritchie for making the sale at such time.

Mr. Ritchie, in his testimony, stated that after a consultation with real estate gentlemen and the auctioneers, and after an inspection of the property, he concluded that it was utterly hopeless to make sale of the property to individual lot buyers, that "the only people we thought could be interested in the property at all would be those who would develop it as an entirety, and that such persons would much prefer to buy the property in December than in the spring, for if the sale was not made until the spring, probably the purchaser could not perfect his plan and be able to dispose of the lots in the spring and summer of that year. But if sold in December, he could at once proceed to develop the property and make it available to purchasers in the spring and summer, the most propitious seasons of the year for the sale of individual lots."

The evidence offered to sustain this objection consists merely of the opinion of witnesses expressed by them with no sound or convincing reason therefor.

This Court has held that a sale should not be set aside and a resale ordered as a mere experiment, *Bank of Commerce v. Lanahan, Trustee, supra,* and this we think would be the result of our decision should we set aside this sale. We will, therefore, affirm the order of the Court below.

> *Order affirmed, with costs to the appellee in each of the appeals.*