## FRANK PRESKE *v.* CHARLES CARROLL, JR.

[No. 41, October Term, 1940.]

544

*Decided November 14th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, JOHNSON, and DELAPLAINE, JJ.

*Jerome A. Loughran,* for the appellant.

*Charles Carroll, Jr.,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.,

The appeal of Frank Preske, mortgagor, is from a decretal order of the Circuit Court for Howard County, overruling his exceptions to a foreclosure sale, which was held by Charles Carroll, Jr., assignee, in Ellicott City on October 28th, 1939.

The first ground of exception is that the sale was improperly advertised. Under the provisions of the Maryland statute, any persons offering mortgaged property for sale shall give such notice thereof as the mortgage requires, but, in the absence of agreement as to notice, he shall give twenty days' notice by advertisement in some newspaper printed in the county wherein the property lies. In the event there is no newspaper published in the county, then the notice shall be given "in a newspaper having a large circulation in said county, and also by advertisement set up at the courthouse door of said county." Code, art. 66, sec. 9. In this case the mortgage authorized public sale on default after twenty days' notice in some newspaper printed in Howard County and such other notice as "may be deemed expedient." The assignee duly advertised the sale in the Ellicott City Times, which is the only newspaper published in Howard County, and thereby complied with the requirement of the mortgage. The appellant complained that the assignee did not post any sale bills; but sale bills are ordinarily not essential to the validity of a foreclosure. The law requires the posting of a notice of a mortgage sale at the court house door only when there is no newspaper published in the county wherein the mortgaged property lies. *Roberts v. Loyola Perpetual Bldg. Assn.,* 74 Md. 1, 5, 21 A. 684; *Clements v. Union Trust Co.,* 170 Md. 520, 185 A. 462.

According to the record in this case, the advertisement described the mortgaged property as follows: "All those

three lots or parcels of ground, situate and lying in the First Election District of Howard County, State of Maryland, on the west side of the Dorsey Road, just to the south but not abutting on the Baltimore-Washington Boulevard, improved by a large Hall, with a practically new hardwood floor in it, suitable to be used as a skating rink or dance hall, and other buildings." The appellant claims that this description was insufficient because it did not state the dimensions of the lots and did not specify certain cabins and a shower bath house as the other buildings. In 1847 Chancellor Johnson asserted the existence of a presumption of law in favor of the validity of judicial sales. He declared in two opinions affirmed by the Court of Appeals: "Whilst the Chancellor would consider it his duty to vacate sales made by officers of his appointment, under the influence of error, fraud, misrepresentation, or injurious mistake, he nevertheless thinks that it would be a fatal policy to be astute in finding out objections to them. The impression of the Court is that they are entitled to the benefit of every fair and reasonable intendment * * *." *Gibbs v. Cunningham*, 1 Md. Ch. 44, 51; *Cunningham v. Schley*, 6 Gill 207, 230. It is now a familiar principle that the description of property in a notice of sale under foreclosure proceedings should be sufficient to enable any one, by the exercise of ordinary intelligence, to locate the property and to obtain more detailed information concerning it, if desired. *Welch v. Byerly,* 150 Md. 107, 112, 132 A. 616, 618. Failure of a notice of sale to mention or properly describe improvements on mortgaged premises may be sufficient ground for vacating the sale, if shown to be prejudicial to it, but such a result will not follow where no evidence has been produced to show that the omission misled any one or had any prejudicial effect. Thus, where an advertisement of a mortgage sale of a farm in Maryland failed to mention certain timber valued by some of the witnesses at $3300, the court declared that it was unnecessary to discuss the value of the timber, since there was no evidence that its omission

from the notice had caused any injury to the sale. *Holton Park Co. v. Gary,* 133 Md. 509, 105 A. 751. It has also been held unnecessary, in .foreclosure proceedings, to mention in the notice of sale the metes and bounds of the land. *Stevens v. Bond,* 44 Md. 506. In the present case there is no evidence that any prospective purchasers were misled by the advertisement or had any doubt as to what was offered for sale. There is also no evidence that competition for the purchase of the property was diminished by the character of the advertisement. The advertisement contained the names of the parties to the mortgage, the date of the mortgage, and the reference ' to the exact page where it is recorded in the office of the clerk of the Circuit Court for Howard County. It identified the property and also enabled any one interested in it to obtain more detailed information from the mortgage, the prior conveyances, and the plat on record in the office.

The second contention of the appellant is that the sale was held before 11 A. M., the time set in the advertisement, and did not produce the highest price obtainable for the property. It is an elementary principle of law that a foreclosure sale should be held at the time and place mentioned in the notice of sale, and any sale held at a time other than that appointed should not be confirmed by the court. *Clemens v. Union Trust Co.,* 170 Md. 520, 531, 185 A. 462. In a case in Minnesota, where mortgaged property was advertised to be sold at 11 A. M., but the sale was actually held between 10.30 and 10.45 A. M., the court declared: "We do not mean that making the sale a few minutes before, or a few minutes after, the absolutely correct time would necessarily render the sale void. Reasonably accurate time-pieces vary a few minutes in the time, and a sale in which there should be a departure from the absolutely correct time, by reason of such variance, would probably be good, for persons purposing to attend such a sale may be supposed to take into account the fact that time-pieces practically accurate will vary a

few minutes. It is not found that selling before the hour, in this case, was by reason of the ordinary variance in time-pieces. It would be difficult to suppose that anticipating the proper time by from fifteen to thirty minutes could be due to that cause." *Richards v. Finnegan*, 45 Minn. 208, 47 N. W. 788. But in the case before us the auctioneer, Roland S. Maxwell, testified that the sale was held immediately after the appointed hour. He said that he and the assignee met about 10.55 A. M., and entered the courthouse together and waited until the crowd gathered, and then appeared about 11 o'clock. After the auctioneer announced that they were ready to start the sale, the assignee read the advertisement, and the auctioneer thereupon asked for bids. When questioned at the hearing in the court below whether he was positive that the sale did not start until after 11 A. M., the auctioneer replied: "I am just as positive as I am sitting in this chair." His testimony was corroborated by Philip T. Sybert, attorney for the purchaser, who testified that he had left some people in his law office as he looked at his watch about 10.59 A. M., and arrived at the court house about 11.01 or 11.02 A. M. He said that the sale had not yet started at that time. It was testified by John C. Wall, the mortgagee, that it was nearly 11.15 A. M. when the bidding started. In contrast with this positive testimony, the testimony of the appellant and his wife is conflicting and unconvincing. The appellant swore that when the sale was held they could not see the court house door from their parked car; his wife swore that they could. The only witness who supported their allegation that the sale was prematurely held was Charles D. Fowler, who nevertheless was present at the sale and purchased the property for his wife. The weight of the evidence shows that the sale was held at the hour designated in the notice of sale.

The third contention of the appellant is that the price obtained for the property, $2450, is grossly inadequate. He executed the mortgage on February 16th, 1929, to secure a loan of $2000 for three years. It is strange

that Fowler, the purchaser of the property, contradicted his own attorney as to the regularity of the sale, and then swore that he considered the property to be worth $5000. The appellant declared that he had carried fire insurance on the property in the amount of $4000, but admitted that the insurance company cancelled the policy. He has been in default in the payment of the indebtedness since 1932. He has not paid any interest and taxes since 1938. The law has long been established in the state that mere inadequacy of price, standing by itself, is not sufficient to invalidate a sale, unless it be so gross and inordinate as to shock the conscience, and raise the presumption of unfairness, mistake, or fraud in the conduct of the sale. *Bank of Commerce v. Lanahan*, 45 Md. 396, 412; *Hunter v. Highland Land Co.*, 123 Md. 644, 647, 91 A. 697. This court has called inadequacy of price "a strong auxiliary argument" in connection with circumstances which cast doubt or suspicion upon the fairness of the sale. *James Robertson Mfg. Co. v. Chambers*, 113 Md. 232, 237, 77 A. 287; *Waters v. Prettyman*, 165 Md. 70, 74, 166 A. 431; *Harvey v. Provident Savings Bank*, 170 Md. 295, 184 A. 228. In Colorado, where certain real estate subject to a trust deed in the amount of $5000 was sold for $3000, the court refused to set the sale aside, in spite of the testimony of some of the witnesses that the property was worth from $7500 to $10,000, and even though the beneficiary of the trust was the only bidder. *Lothrop v. Tracy*, 24 Colo. 382, 51 P. 486. Moreover, under the maxim that "he who seeks equity must do equity," no exceptant to a sale is entitled to obtain the aid of a court of equity unless he offers to pay a higher price for the property, or at least gives assurance that some other person would be likely to do so, even though there may be some irregularity in the conduct of the sale. In this case the appellant has given no assurance that he would bid on the property if sold again. He has made no offer to pay the costs of the proceedings or any expenses of the sale. He has made no promise to pay the interest or taxes in arrears. For ex-

ample, in proceedings to vacate tax sales, the complainants are generally required to pay all taxes in arrears at the time of the sale, as well as all taxes subsequently due, as a condition precedent to the exercise of chancery jurisdiction. *Steuart v. Meyer,* 54 Md. 454, 468. Likewise the court, in foreclosure proceedings, should not set aside a reported sale and order a resale as a mere experiment, but only when it is reasonably probable that a better price could be obtained at another sale. *Weber v. Merowitz,* 160 Md. 674, 677, 155 A. 169. It also appears that although it has been more than a year since the day of the sale, the appellant has filed no appeal bond in accordance with the statute. While it has been held that failure to file an appeal bond does not invalidate the appeal, nevertheless the very purpose of the bond, as expressed by the Legislature, is to "stay the execution or suspend the operation of such decree or order." Code 1939, art. 5, sec. 33. And the rights of a purchaser of mortgaged property are not affected by a reversal by the Court of Appeals of the order of ratification, unless a bond is given to stay the proceedings. *Humphreys v. Slemons,* 78 Md. 606, 28 A. 1101; *Raith v. New Baltimore Bldg. & Loan Assn.,* 140 Md. 542, 545, 118 A. 67; *Herman v. Mondawmin Bldg. & Loan Co.,* 145 Md. 480, 490, 125 A. 814; *Webster v. Archer,* 176 Md. 245, 258, 4 A. 2nd 434.

The fourth contention is that the auctioneer cried the sale so hurriedly that prospective purchasers did not have time enough to bid. The record shows that there were only a few bidders, and after the bid of $2300 was offered there were only two, the mortgagee and the purchaser. The auctioneer testified: "After I got every dollar in the crowd, I announced with a clear, ringing voice * * * that I was going to knock the property down. So I waited for a few seconds, and didn't get another bid, and I knocked the property down to Mr. Fowler." The auctioneer stated that, while he required only approximately five minutes to cry the sale, he was certain he "got every dollar around the courthouse." It is true

that any act of an auctioneer, or the party selling, or of third parties as purchasers, which prevents a fair, free and open sale, or which diminishes competition and stifles or chills the sale, is contrary to public policy and vitiates the sale. *Smith v. Ullman,* 58 Md. 183, 189; 5 *Am. Jur., Auctions,* sec. 26; 7 *C. J. S., Auctions and Auctioneers,* sec. 7, p. 1255. But there is no evidence in this case that any person was prevented from bidding or raising his bid at the auction. In the case of *Mahoney v. Mackubin,* 52 Md. 357, 365, where the complaint was made that "sufficient time was not given for the bidders to bid; that it was too much hurried up, and the property was struck off too quickly," this court held that, in the absence of good ground for the charge that any bidders had been prejudiced, there was nothing to justify disturbance of the sale.

The question has also arisen in this case whether Charles F. Wearing and Edward M. Pinnell, real estate dealers, were competent to testify as experts as to the value of the mortgaged property. It is well established that any real estate dealer, or assessor, or any other person who has been engaged in business of such a character as to give him special knowledge of the subject, is competent to testify in reference to the value of land, if he has had an opportunity to form a correct opinion as to its value. *City of Baltimore v. Yost,* 121 Md. 366, 381, 88 A. 342; *Jackson v. Shawinigan Electro Products Co.,* 132 Md. 128, 140, 103 A. 453. However, in the rulings of the chancellor excluding the testimony of the real estate dealers we find no reversible error.

*Order affirmed, with costs.*